UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

DON KARL JURAVIN,

       Plaintiff,

v.                                     CASE NO.:

JUDGE CARY F. RADA,

JUDGE DAN R. MOSLEY,

LAKE COUNTY,

       Defendants.

## **COMPLAINT**

### INTRODUCTION

Plaintiff Don K. Juravin brings this civil action against Judge Cary F. Rada, Judge Dan R. Mosley, and Lake County, asserting that a pattern of judicial bias, procedural misconduct, and systemic failures in Lake County's judiciary have deprived him of fundamental constitutional rights. Throughout the proceedings, the named defendants engaged in actions that violated due process, disregarded legal

precedent, and exhibited unethical judicial behavior, culminating in decisions that caused severe financial, emotional, and reputational harm to Plaintiff.

Juravin acknowledges that judges have given themselves broad immunity under current legal doctrine. However, Plaintiff seeks to challenge this legal precedent, arguing that judicial immunity should not extend to judges who engage in clear bias, procedural misconduct, and collusion, as alleged in this case. In drawing a comparison, Plaintiff asserts that judges should not enjoy greater immunity than law enforcement officers, who, despite having to make life-or-death decisions, are afforded only limited immunity and held accountable when their actions lead to harm.

This action exposes a systemic failure within the Lake County judiciary, highlighting biased judicial rulings made under the influence of powerful politically connected figures, such as Dwight Schar, and bringing to light a broader conspiracy to deprive Plaintiff of his property and rights through unfair legal tactics and improper judicial conduct.

The **Lake County court system** operates as an entrenched **"old boys' club"**, where the **interests of established and influential figures** take precedence over the pursuit of justice for all citizens. This dynamic is exacerbated by the **lack of diversity** in the judicial ranks: currently, there are **no Black judges** serving on

the bench in the entire county. The composition of the judiciary reflects a **systemic preference for maintaining the status quo**, one that often shields powerful individuals and local elites while limiting the opportunities for those outside this network.

This **lack of representation** underscores a broader issue within the county's legal system, where judges and those in positions of influence may be more inclined to protect the interests of their **politically connected peers** rather than serve the community at large. Without diverse perspectives in the judiciary, the system remains skewed toward protecting **long-established local power structures**.

In cases like those involving **Dwight Schar**, where **powerful developers** hold significant sway over local politics and the economy, the likelihood of **fair and impartial rulings** comes into question. The absence of diversity in the courts contributes to a judicial environment that is less accessible to **minorities and marginalized groups**, perpetuating a cycle of exclusion and preferential treatment for **wealthy and influential parties**.

PARTIES

1. Plaintiff Don K. Juravin was a resident of Montverde, Lake County, Florida at all times complained of, and is the founder of three nonprofit organizations, including a ministry that houses religious artifacts within his

home. Plaintiff has been involved in numerous legal disputes against powerful figures, including Dwight Schar, resulting in substantial financial and emotional harm to Plaintiff and his family.

2. Defendant Judge Cary F. Rada is a sitting judge in the Circuit Court for Lake County, Florida, Fifth Judicial Circuit. He has presided over multiple cases involving Plaintiff, during which he exhibited clear bias and procedural misconduct, violating Plaintiff's constitutional rights.

3. Defendant Judge Dan R. Mosley is a sitting judge in the Circuit Court for Lake County, Florida, Fifth Judicial Circuit. Judge Dan R. Mosley has demonstrated similar bias and disregard for legal precedent, particularly in cases involving Dwight Schar and his associates, who have maintained substantial influence in Lake County's legal and political landscape.

4. Defendant Lake County is responsible for overseeing the judicial and law enforcement activities within its jurisdiction, including the actions of Judges Rada and Mosley. Plaintiff asserts that Lake County failed to adequately address the systemic judicial misconduct and procedural irregularities that have occurred in cases involving Plaintiff, resulting in further harm.

JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights), as the action arises from violations of Plaintiff's rights under the Fourteenth Amendment to the U.S. Constitution and other federal civil rights statutes.

6. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Lake County, Florida, which is within the Middle District of Florida. The Defendants, including Judge Cary F. Rada, Judge Dan R. Mosley, and Lake County, either reside or conduct business within this district, and the actions leading to the deprivation of Plaintiff's constitutional rights occurred within this venue.

FACTUAL ALLEGATIONS

A. Unorthodox and Adverse Actions by Judge Cary F. Rada

7. On multiple occasions, Judge Cary F. Rada demonstrated a pattern of bias favoring Dwight Schar and his associates, including PSR Developers LLLP, in legal proceedings involving Plaintiff Don K. Juravin.

8. Judge Rada left key portions of a court order blank, later without a hearing allowed opposing counsel to make changes in the final version of the

summary judgment order, demonstrating a lack of judicial oversight and fairness.

9. Judge Rada entered summary judgment in favor of PSR Developers LLLP while there were still pending counterclaims by Plaintiff, in violation of legal precedent, which mandates that all claims and counterclaims must be resolved before entering summary judgment.

10. Even after entering summary judgment on the main claim, Judge Rada went on to rule on the pending counterclaims, despite no longer having jurisdiction over the matter.

11. Plaintiff's demand for a jury trial was struck, depriving Plaintiff of his constitutional right to have key aspects of his case decided by a jury, particularly substantial defenses and counterclaims.

12. In the final judgment, Judge Rada added improper amounts to the total judgment without properly supporting these amounts or allowing Plaintiff to challenge them during hearings.

13. Judge Rada reversed his statement about when he would rule on the motion for summary judgment, initially promising to wait until the Court of Appeals ruled on a pending matter. However, he ruled without notice, leaving Plaintiff unprepared to defend himself.

14. The previous judge in the case (also from Lake County) granted PSR's motion to compel access to Plaintiff's home without requiring a licensed inspector, despite the home serving as the headquarters of three nonprofit organizations, including a ministry housing religious artifacts. This ruling was made without regard to the privacy of Juravin's two teenage daughters who lived in the house.

15. Judge Rada also approved the foreclosure sale of Plaintiff's home at a price significantly below its market value, with Schar's associates being the only bidder at the sale. This caused substantial financial harm to Plaintiff, forcing him to uproot his family, including two teenage daughters, from their home and community.

16. Schar's influence in having Judge Mosley appointed to the bench, coupled with Rada's rulings consistently favoring Schar, demonstrates a clear conflict of interest and collusion, depriving Plaintiff of fair judicial treatment.

B. Unorthodox and Adverse Actions by Judge Dan R. Mosley

17. Judge Dan R. Mosley similarly demonstrated bias against Plaintiff by ignoring a Motion for additional time to obtain counsel and dismissing his cases in case numbers 35-2020-CA-001053 and 35-2022-CA-000961 with

prejudice, despite Plaintiff having made significant amendments to his complaints.

18. Plaintiff moved for recusal of Judge Mosley due to clear bias and connections to Dwight Schar, but Judge Mosley refused to recuse himself, further denying Plaintiff fair proceedings.

19. When Plaintiff's insurer – who was funding Juravin's defense in this 7 years old action (case number 2017 CA 000667) – went insolvent, Judge Mosley refused to stay the instant litigation, despite being provided with controlling case law and a statute that mandated such a stay. Ultimately, Plaintiff was forced to take the extraordinary step of obtaining a Writ of Prohibition from the Fifth District Court of Appeals to enforce a stay. Judge Mosley simply ignored the statute and the Notice of Stay filed in the case.

20. Judge Dan R. Mosley also denied Plaintiff's Motion for Leave to Amend to assert a third-party complaint, without finding that the amendment would be futile, prejudicial or that the privilege had been abused but granted a request by Schar's associates/proxies for leave to amend their Complaint four (4) times, including the addition of a new defendant in 2023, Plaintiff's wife.

21. Judge Dan R. Mosley issued conflicting contempt orders, one permitting Plaintiff to avoid jail with a $10,000 purge payment, and another that failed

to acknowledge this provision. This left Plaintiff at risk of double jeopardy, stemming from judicial negligence.

22. During the contempt hearing, Judge Dan R. Mosley allowed testimony from Schar's attorney, Marc Randazza, who has multiple ethics complaints pending across several jurisdictions, further demonstrating bias in favor of Schar and his associates. This was an ambush, since Plaintiff's attorney had no notice that Randazza would be testifying.

23. There are numerous decisions from Judge Dan R. Mosley that have been against the Plaintiff with no discernable legal or factual basis. Judge Dan R. Mosley just rules without writing any sort of opinion. This is done because he knows that he can simply refuse to do so, which leaves the Court of Appeals nothing to review. For example: In case number 2017 CA 000667, in relation to the temporary injunction which has been in place since February 28, 2018, Judge Mosley denied a Motion to Dissolve or Modify the temporary injunction. Again, this was done with no findings of fact or law, and despite being presented with controlling case law establishing that: (a) a temporary injunction cannot be maintained for a substantial period of time without requiring the moving party to meet the standard for a permanent injunction; and (b) temporary injunctive relief is not available to prohibit the making of defamatory statements. Plaintiff also pointed out that despite

seven (7) years of litigation, the opposing party has not presented a single piece of evidence demonstrating any lost business due to any of the online activity Plaintiff is currently enjoined from participating in. Judge Dan R. Mosley failed to equally apply the law in an impartial manner and denied the motion without addressing any of these legal or factual issues.

24. In case number 2017 CA 000667 Judge Dan R. Mosley denied Plaintiff's Motion to Overrule Deposition Objections and Compel Answers and to Show Cause for Failing to Comply with Court Order – again with no findings of fact or law to allow an evaluation of the grounds for the decision. Simply put, there could be no legal basis for sustaining Schar's counsel instructing Dwight Schar not to answer deposition questions based on relevance. Nor is there any support for Judge Mosley's statement that "the witness does not possess any additional documents relevant to the requests for production." Possession is not the standard for "custody or control," as outlined in Defendant's motion, and it is beyond dispute that Mr. Schar chose to completely ignore the court's order and make no attempt to determine if he had responsive documents in his custody or control.

25. In case number 2022 CA 000889 Judge Dan R. Mosley approved a settlement allowing destruction of documents and potential evidence in order to protect billionaire Schar and his interests. This was done knowingly. This

evidence was vital to Juravin's case. Judge Mosley presides over both cases and hides the truth to protect Schar's financial interests. Please see composite Exhibit 1 (Paragraph 4 in the Settlement Agreement: "Mr. Arrighi and his counsel shall immediately destroy any and all documents or communications relating to DCS Parties or RGDI in their possession, custody or control" and in Paragraph 18 in Permanent Injunction: "destroy every copy of any DCS business record or communication".)

26. Judge Dan R. Mosley aided Dwight Schar and his associates by silencing Don Juravin and approving the payoff of $3,250,000.00 to Richard Arrighi in exchange for destroying vital evidence relevant to Juravin's case.

27. Judge Dan R. Mosley ignored Motions filed by Don Juravin while giving other parties the time to develop evidence.

28. Judge Dan R. Mosley's rulings are intentionally lacking explanation to make it impossible for a higher court to fully review the matter, leaving them no choice but to affirm his orders.

29. Judge Dan R. Mosley helps Schar to avoid disclosing information in the discovery process and allows the submission of "bogus evidence" in his favor. For about 2 years, Don Juravin and his attorney were trying to obtain discovery and Judge Mosley allowed Schar to evade the production of documentation. Furthermore, Judge Mosley allowed Schar's accountant,

Paul Simonson, to submit editable Excel sheets rather than submit credible financial documents.

C. Systemic Failures in Lake County Judicial Oversight

30. Lake County has demonstrated systemic failures in judicial oversight, allowing conflicting orders and judicial misconduct to persist without investigation or correction, causing direct harm to Plaintiff.

31. Plaintiff alleges that both the Lake County Court System and Lake County Sheriff's Office failed to properly manage and investigate these issues, leaving Plaintiff under a continuous threat of re-arrest despite having complied with the court's purge payment requirement.

32. These systemic issues within Lake County's judicial system are demonstrated and exacerbated by the biased and unfair rulings by Judge Rada and Judge Mosley, contributing to the deprivation of Plaintiff's constitutional rights. This is a pattern of repetitive judicial behavior. See Exhibit 2.

CAUSES OF ACTION

Count I: Violation of Due Process Rights Under the Fourteenth Amendment

33. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

34. Defendants' actions, specifically those of Judge Cary F. Rada and Judge Dan R. Mosley, violated Plaintiff's Fourteenth Amendment rights by engaging in a pattern of judicial bias, procedural irregularities, and misconduct, denying Plaintiff fair treatment and proper legal process.

35. Plaintiff was deprived of his right to a fair trial, the ability to have substantial defenses heard, and the opportunity to defend himself through proper legal avenues due to the biased rulings made by Rada and Mosley in favor of Dwight Schar and his associates.

Count II: Violation of Plaintiff's Right to Access to Courts Under the Florida Constitution

36. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

37. Defendants' actions, through improper judicial conduct and biased rulings, violated Plaintiff's right to access the courts as guaranteed under Article I, Section 21 of the Florida Constitution.

38. The pattern of judicial behavior in this case, including Judge Rada's improper rulings, denial of jury trial, and the handling of foreclosure and contempt proceedings, effectively deprived Plaintiff of his legal right to seek redress through the court system.

Count III: Abuse of Process

39. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

40. The actions of Judge Cary F. Rada, Judge Dan R. Mosley, and Lake County were not only procedurally improper but also constituted abuse of process by using the judicial system to achieve purposes beyond what the legal process was intended for — namely, to deprive Plaintiff of his property and rights in favor of Dwight Schar and his affiliates.

Count IV: Violation of the First Amendment – Freedom of Religion

41. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

42. Defendants, particularly Judge Rada, violated Plaintiff's First Amendment right to the free exercise of religion by allowing unmonitored inspections of Plaintiff's home. This home housed religious artifacts and was the headquarters for

nonprofit religious organizations, including a ministry, and Plaintiff's religious freedoms were undermined by these improper inspections and judicial bias favoring Schar's associates.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Don K. Juravin respectfully requests that this Court:

1. Enter a declaratory judgment that the actions of Judge Cary F. Rada, Judge Dan R. Mosley, and Lake County violated Plaintiff's constitutional rights to due process, access to the courts, and freedom of religion;

2. Award compensatory damages for the substantial financial, emotional, and reputational harm suffered by Plaintiff as a result of Defendants' actions, including the loss of Plaintiff's home, displacement of his family, and the undervaluation of his property in the foreclosure sale;

3. Award punitive damages in the amount of $60 million, to punish Defendants for their egregious actions and deter future misconduct, as Defendants' actions were done with malice, bias, and reckless disregard for Plaintiff's rights;

4. Award attorneys' fees and costs incurred in bringing this action;

5. Grant such further relief as this Court deems just and proper.

Dated: October 15, 2024                                    Respectfully submitted,

_[signature]_

Don Karl Juravin /Pro Se/

11437 Linden Depot Rd.

San Antonio, FL 33576

Don@Juravin.com

(813) 810-5100

CERTIFICATE OF SERVICE

The undersigned certifies that on October 15, 2024, a true and correct copy of the foregoing has been furnished via electronic mail and the U.S. Postal Service to the parties listed below:

| | |
|---|---|
| Honorable Dan R. Mosley, Circuit Court Judge of the Fifth Judicial Circuit<br>Lake County Judicial Center<br>550 W. Main Street<br>Tavares, FL 32778 | Honorable Cary F. Rada, Circuit Court Judge of the Fifth Judicial Circuit<br>Lake County Judicial Center<br>550 W. Main Street<br>Tavares, FL 32778 |
| Lake County Sheriff's Office<br>Office Of The Sheriff<br>360 W Ruby St.<br>Tavares, FL 32778.<br>FAX: (352) 742-4039 | LAKE COUNTY<br>CLERK & COMPTROLLER:<br>Gary J. Cooney, Esq.<br>550 West Main Street, Tavares, FL 32778-3115<br>Fax (352) 742-4110-Executive Office |

_[signature]_

Don Karl Juravin /Pro Se/

11437 Linden Depot Rd.

San Antonio, FL 33576

Don@Juravin.com

(813) 810-5100

**COMPOSITE EXHIBIT 1**

IN THE CIRCUIT COURT OF THE
5th JUDICIAL CIRCUIT IN AND
FOR LAKE COUNTY, FLORIDA.

CASE NO.:  2022 CA 000889

RG DEVELOPMENTS AND INVESTMENTS, LLC,
a Florida limited liability company,

      Plaintiff,

vs.

SEABOARD DEVELOPMENT, LLC,
a Florida limited liability company
and RICHARD ARRIGHI,

      Defendants.

and

DCS Real Estate Investments, LLC,

      Additional Plaintiff/Intervenor.

_____/

**AGREED ORDER
APPROVING SETTLEMENT AND DISMISSING CASE WITH PREJUDICE
<u>WITH RETENTION OF JURISDICTION FOR ENFORCEMENT PURPOSES</u>**

THIS CAUSE, having come before the Court in chambers on the parties' *Joint Motion to*

*Approve Settlement and for Entry of an Order of Dismissal With Prejudice and Retention of*

*Jurisdiction for Enforcement* filed on June 11, 2024; and the parties being in agreement, and the

Court having considered the joint motion and being otherwise advised in the premises, it is hereby:

**ORDERED and ADJUDGED** that

1. The Joint Motion to Approve Settlement and for Entry of an Order of Dismissal With
   Prejudice and Retention of Jurisdiction for Enforcement is **GRANTED**.

2. The Court approves the Settlement and Mutual Release Agreement.

3. This case is hereby **DISMISSED WITH PREJUDICE**, all parties to bear their own
   attorney's fees and costs.

Page 1 of 2

*RG Developments and Investments LLC v. Seaboard Development LLC and Arrighi*    case no. 2022CA000889
Agreed Order

4. The Court retains jurisdiction to enforce the Settlement and Mutual Release Agreement.

**DONE** and **ORDERED** in chambers at Lake County, Florida on this 13th day of June, 2024.

_____
DAN R. MOSLEY, CIRCUIT COURT JUDGE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of June, **2024**, I electronically filed the foregoing document with the Clerk of Court using the Florida E-Filing Portal. I also certify that the foregoing document is being served this day on all counsel of record and interested parties, via transmission generated by the Florida Courts E-Filing Portal.

_____
ANDREA COLUCCIO, JUDICIAL ASSISTANT

Page 2 of 2

IN THE CIRCUIT COURT OF THE
5th JUDICIAL CIRCUIT IN AND
FOR LAKE COUNTY, FLORIDA.

CASE NO.:  2022 CA 000889

RG DEVELOPMENTS AND INVESTMENTS, LLC,
a Florida limited liability company,

      Plaintiff,

vs.

SEABOARD DEVELOPMENT, LLC,
a Florida limited liability company
and RICHARD ARRIGHI,

      Defendants.

and

DCS Real Estate Investments, LLC,

      Additional Plaintiff/Intervenor.

_____/

### JOINT MOTION TO APPROVE SETTLEMENT AND FOR
### ENTRY OF AN ORDER OF DISMISSAL WITH PREJUDICE
### AND RETENTION OF JURISDICTION FOR ENFORCEMENT

Plaintiff RG DEVELOPMENTS AND INVESTMENTS LLC, ("RGDI"), Additional

Plaintiff/Intervenor DCS REAL ESTATE INVESTMENTS LLC ("DCS-REI LLC"), and

Defendants SEABOARD DEVELOPMENT LLC ("Seaboard") and RICHARD ARRIGHI,

(collectively the "Parties"), by and through their undersigned counsels, jointly move for approval

of their Settlement and Mutual Release Agreement and for an order dismissing this case with

prejudice with this Court retaining jurisdiction to enforce the agreement, and state:

      1.     The Parties seek approval of their Settlement and Mutual Release Agreement dated

May 28, 2024 ("Settlement Agreement"), attached as **Exhibit 1**.

*RG Developments and Investments LLC v. Seaboard Development LLC and Arrighi*          case no. 2022CA000889
Joint Motion

2.      The Settlement Agreement settles all claims made in the instant case ("RGDI Case") and in *Arrighi v. DCS Capital Investments LLC, et al*, case no. 2022-CA-010177-O that was pending in the Ninth Judicial Circuit Court in Orange County, Florida ("Arrighi Case").

3.      Further, the defendants in this RGDI case have agreed that upon the occurrence of certain events, both RGDI and DCS-REI LLC may seek enforcement of the Settlement Agreement by, among other means, seeking an order entering the permanent injunction that is attached and incorporated into the Parties' Settlement Agreement as Exhibit A.

WHEREFORE, RG Developments and Investments LLC, DCS Real Estate Investments LLC, Seaboard Development LLC, and Richard Arrighi, request that this Court enter an order granting this motion by approving the Parties' Settlement Agreement, dismissing this case with prejudice and retaining jurisdiction to enforce the Settlement Agreement, and any other relief necessary.

Dated: June 11, 2024.          Respectfully submitted,

/s/ *James A.Timko*          
   JAMES A. TIMKO, ESQ.          
   Florida Bar no. 0088858          
   **DEAN, MEAD, EGERTON,**          
   **BLOODWORTH, CAPOUANO**          
   **& BOZARTH, P.A.**          
   Post Office Box 2346          
   Orlando, Florida 32802-2346          
   (407) 841-1200    Fax: (407)423-1831          
   jtimko@deanmead.com          
   mgodek@deanmead.com          
   *Co-counsel for RGDI and DCS-REI LLC*

/s/ *James D. Ryan*          
   JAMES D. RYAN, ESQ.          
   Florida Bar no. 976751          
   *Mobile (561) 889-1001*          
   jdr@ryanlawgroup.net          
   sue@ryanlawgroup.net          
   jacqueline@ryanlawgroup.net          
   LAUREN J. SCHINDLER, ESQ.          
   Florida Bar no. 0064572          
   lauren@ryanlawgroup.net          
   **RYAN LAW GROUP, PLLC**          
   636 U.S. Highway One, suite 110          
   North Palm Beach, Florida 33408          
   (561) 881-4447   Fax: (561) 881-4461          
   *Co-counsel for RGDI and DCS-REI LLC*

*RG Developments and Investments LLC v. Seaboard Development LLC and Arrighi*          case no. 2022CA000889
Joint Motion

/s/*Tucker H. Byrd*
TUCKER H. BYRD
Florida Bar No. 381632
ANDREW M. DOMINGOES
Florida Bar No. 1010448
**BYRD CAMPBELL, P.A.**
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
(407) 392-2285     Fax: (407) 392-2286
TByrd@ByrdCampbell.com
ADomingoes@ByrdCampbell.com
Paralegal@ByrdCampbell.com
*Attorneys for Defendants*

### CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED this **11th** day of **June**, **2024**, that a true and correct copy of the foregoing was served via Florida E-filing Portal to all registrants entitled to receive service, including:

**Tucker H. Byrd**, TByrd@ByrdCampbell.com; SMcPherson@ByrdCampbell.com
**Andrew Domingoes**, adomingoes@byrdcampbell.com; Paralegal@ByrdCampbell.com;
Byrd Campbell, P.A., 180 Park Avenue North, Suite 2A
Winter Park, Florida 32789

**James A. Timko**, jtimko@deanmead.com; mgodek@deanmead.com
Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A.
420 S. Orange Avenue, Suite 700
Orlando, FL 32801

/S/ *LAUREN J. SCHINDLER*
JAMES D. RYAN, ESQ.
LAUREN J. SCHINDLER, ESQ.
**RYAN LAW GROUP, PLLC**

# *Exhibit 1*

## SETTLEMENT AND MUTUAL RELEASE AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is made and entered into this 26TH day of MAY , 2024 ("Effective Date") by and between DCS CAPITAL INVESTMENTS, LLC, DCS CAPITAL INVESTMENTS I, LLC, DCS REAL ESTATE INVESTMENTS, LLC, DCS REAL ESTATE INVESTMENTS I, LLC, DCS REAL ESTATE INVESTMENTS III, LLC, DCS REAL ESTATE INVESTMENTS IV, LLC, DCS REAL ESTATE INVESTMENTS V, LLC, DCS REAL ESTATE INVESTMENTS V-A, LLC, DCS REAL ESTATE INVESTMENTS VI, LLC, THE CLUB AT BELLA COLLINA, LLC, DWIGHT C. SCHAR, and PAUL E. SIMONSON (collectively, the "DCS Parties"), and RG DEVELOPMENTS AND INVESTMENTS, LLC ("RGDI"), RICHARD ARRIGHI ("Mr. Arrighi"), ROBIN ARRIGHI ("Mrs. Arrighi") and SEABOARD DEVELOPMENT, LLC ("Seaboard", and collectively with Mr. Arrighi and Mrs. Arrighi, the "Arrighi Parties" and collectively with the DCS Parties and RGDI, referred to below individually as a "Party" or collectively as the "Parties").

## RECITALS

WHEREAS, on May 29, 2022, RGDI filed a complaint against Seaboard and Mr. Arrighi in the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida: Case No.: 2022 CA 000889 ("RGDI Case");

WHEREAS, on November 09, 2022, Mr. Arrighi filed a complaint against Defendants in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida: Case No.: 2022-CA-010177-O ("Arrighi Case");

WHEREAS, both cases pertain to the Parties respective rights and obligations arising out of efforts relative to certain real estate projects owned and or controlled by various DCS Parties;

WHEREAS, the RGDI Case contains a claim for injunctive relief against Seaboard and Mr. Arrighi and both cases contain claims for money damages;

WHEREAS, the Parties, having formally and informally exchanged documents and information and evaluated the strengths and weaknesses of their respective claims and defenses, and without any admissions as to their respective positions, are desirous of compromising and settling all claims in their entirety, on the following terms and conditions; and,

NOW THEREFORE, in consideration of the premises and mutual promises set forth below and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree to settle their respective claims as follows:

1.    **Take Down**. Mr. Arrighi shall undertake best efforts, including, without limitation, providing an appropriate demand from legal counsel, to permanently remove/take

Page 1 of 11

**Error! Unknown document property name.**



Case Nos. 2022-CA-010177-O and 2022-CA-00889
Settlement Agreement

down or cause to be removed / taken down from websites used to promote himself or his businesses interests, all references to an affiliation with, or work performed by, Mr. Arrighi or any company with which he was or is affiliated and any of DCS Parties and their affiliates and family members, The Bella Collina residential golf and country club development in Montverde, Florida ("Bella Collina") including The Club at Bella Collina, JW Marriott at Bonnet Creek, Marriott and Westin Hotels at Orange County Convention Center/Westwood, Celebration Retail, Celebration Apartments, and Eden Springs.

2.   **Cease Referencing Direct Affiliations and Removal of Content Showing Direct Affiliation**.

A.   Mr. Arrighi shall not promote or publish himself or any company with which he was or is affiliated as being or having been: a founder, partner, in partnership with, in joint venture with, a party to a direct contract with, or any direct business relationship with RGDI any of DCS Parties, their affiliates, or their projects, including but not limited to The Bella Collina Residential Golf and Country Club development in Montverde, Florida, The Club at Bella Collina, JW Marriott at Bonnet Creek, Marriott and Westin Hotels at Orange County Convention Center/Westwood, Celebration Retail, Celebration Apartments, and Eden Springs.

B.   Mr. Arrighi shall promptly upon the execution of this Agreement use best efforts, including, without limitation, providing an appropriate demand from legal counsel, to remove or cause removal of: **(i)** all references to the direct affiliations with any of DCS Parties, their affiliates or their projects as set out in Paragraph 2.A above that are currently published on websites, internet platforms and/or social media apps, e.g., *"Founder of Bella Collina and partner of Dwight Schar (NVR Inc., Washington Football Team)"* appearing on https://www.richardarrighi.com, including each social media site identified on said web site (Facebook, X (formally Twitter), YouTube, Pinterest, LinkedIn and Instagram); **(ii)** Images of Bella Collina published on websites or internet platforms with which he or any company with which he is affiliated, e.g., https://www.richardarrighi.com/real-estate; and **(iii)** shall not use such images or the DCS Parties Trademarks or Wordmarks ("Marks") or any Marks of any of them use in connection with any DCS project including but not limited to Bella Collina.

C.   Upon completion of him using the efforts required by subsection 2.B., above, regardless of whether his efforts are completely successful, Mr. Arrighi shall provide a detailed description of the efforts he made to comply



Case Nos. 2022-CA-010177-O and 2022-CA-00889
Settlement Agreement

with the take down obligation, shall produce copies of all communications demonstrating his efforts and shall provide the nominee of the DCS Parties with a durable and limited power of attorney authorizing the nominee to act on his behalf to continue such efforts. Such power of attorney shall contain a representation that he has not authorized any third party to use his name or likeness in connection with the publication of material in or like the content identified in Section 1 or 2 of this Agreement and, if any authorization was ever given, he shall identify the person(s) to whom such authorization was given and if such authorization has not yet been terminated, he shall terminate it in writing and shall provide copies of all communication(s) granting and terminating such authorization.

3.  **Termination of Assistance to the Juravins.**  Mr. Arrighi agrees that he shall not assist Don Juravin, Anna Juravin, and any member of their family (collectively the "Juravins") and any entity with which any of the Juravins are related (the "Juravin Entities"), with all efforts that touch or concern the DCS Parties and/or RGDI, including but not limited to any affiliated entity, member of defendant Mr. Schar's family, defendant Mr. Simonson's family, Randall F. Greene or his family, and any attorney representing any of DCS Parties including, but not limited to, James D. Ryan, Ryan Law Group PLLC and its attorneys, James A. Timko, the Dean Mead law firm and its attorneys.  This prohibition includes, but shall not be limited to, providing any paper or electronically stored information to the Juravins or Juravin Entities. Further, to this end, Mr. Arrighi agrees to file papers or the appropriate electronic filings with the appropriate secretary of state resigning from, or declining, any position with all Juravin entities including but not limited to those now or formally known as Dwight Schar Victims, Inc., Original Bible Foundation, CODE2GOD, and Loving God Without Religion and regardless of whether such entity is now known by another name.

4.  **Permanent Injunction. In the event Mr. Arrighi fails to comply with or violates his obligations under provision 1 – 3 of the Settlement Agreement** RGDI and/or DCS, without prior notice and upon filing an affidavit identifying the default, shall be entitled to seek entry of the permanent injunction which is attached hereto and incorporated herein as <u>Exhibit "A"</u>. **Arrighi acknowledges that he has is no right to cure such violation of this Agreement, and he waives any and all defenses to the entry of the injunction, except to the extent he asserts by competing affidavit filed of record based upon which he has the right to be heard, before the injunction is entered that no noncompliance or violation exists.**  A violation of the injunction by Mr. Arrighi and/or Seaboard l shall be a violation of this Agreement.  Mr. Arrighi and Seaboard agree to fully cooperate with the entry of the injunction in the RGDI Case.  Furthermore, the DCS Parties



Case Nos. 2022-CA-010177-O and 2022-CA-00889
Settlement Agreement

or any of them are entitled to intervene in the RGDI case before it is dismissed so they may seek any remedy deemed appropriate to address any breach of this Agreement and / or to obtain or enforce the injunction . Mr. Arrighi and his counsel shall immediately destroy any and all documents or communications relating to DCS Parties or RGDI in their possession, custody or control.  If Mr. Arrighi receives a subpoena for any documents or testimony relating or referring to RGDI and/or DCS Parties or any of their real estate projects, within five (5) days of receipt of such subpoena, Mr. Arrighi shall provide a copy of the subpoena to RGDI or the DCS Parties through their counsel and if a timely objection is filed to the subpoena, Mr. Arrighi and Seaboard agree to refrain from producing any information until such objection is resolved.  Notwithstanding the foregoing, no copies of such communication between Mr. Arrighi and any of the Juravins or the Juravin Entities, or any of them, shall be destroyed. All copies of those materials shall be produced to the DCS Parties, c/o James A. Timko, Esq., together with a declaration that such records constitute the entirety of such communications that Mr. Arrighi has and identifying any documents that he once had but cannot produce. Identify, identifying and identification when used in reference to a writing or document mean to give a sufficient characterization of such writing or document to properly identify it in a request to produce and shall include, without limitation, the following information with respect to each such document:

A.    the date appearing on such document, and if it has no date, the answer shall so state and shall give the date or approximate date such document was prepared;

B.    the identity or descriptive code number, file number, title or label of such document;

C.    the general nature and description of such document, and if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

D.    the names of the person(s) to whom such document was addressed and the name of each person other than such addressee to whom such document or copies of it, were given or sent;

E.    the name(s) of the person(s) having the present or last know possession, custody, or control of such document(s); and

F.    whether or not any draft, copy or reproduction of such document contains any postscripts, notations, changes, or addendum not appearing on the

Page 4 of 11



Case Nos. 2022-CA-010177-O and 2022-CA-00889
Settlement Agreement

document itself, and if so, the answer shall give the description of each such draft, copy or reproduction.

5. **Listing Agreement for the Sale of 15008 Pendio Drive Residence.** Mr. Arrighi acknowledges that he presently owns the home located at 15008 Pendio Drive, Montverde, Florida (the "Arrighi Residence") with his wife, Mrs. Arrighi. Mr. and Mrs. Arrighi agree to the following:

A. The Arrighi Residence located at 15008 Pendio Drive shall be listed for sale with the Bella Collina Real Estate Company, LLC (the "Broker"), the listing agreement will be executed within five (5) days of the execution of this Agreement. The listing agreement shall state that the Arrighi Residence will not be listed for sale until ninety (90) days after the execution of the listing agreement and will reflect a 5% commission with or without a cooperating broker. **Under no circumstance will the Arrighis be obligated to accept an offer that requires them to close on the sale less then 180 days from the effective date of this agreement;**

B. The Broker's customary listing agreement shall be signed by Mr. Arrighi and by Mrs. Arrighi, each signature being made in person and witnessed by two witnesses selected by Mr. Paul Simonson;

C. Conveyance of the Arrighi Residence shall be to a new owner that buys the Arrighi Residence for good value and in accord with the terms and conditions set forth in the Bella Collina CC&Rs as evidenced by a deed to the new owner being recorded in the Public Records of and for Lake County, Florida;

D. The Arrighi family shall fully cooperate with the showings and sale of the Arrighi Residence, including timely vacating the Arrighi Residence;.

E. The Arrighi Residence shall be appraised by RB Wright, LLC at market value (the "Appraisal Value"). DCS shall be responsible for paying for the appraisal;

F. Mr. Arrighi and Mrs. Arrighi shall accept any purchase offer on the form of contract customarily used by the Broker and subject to all customary practices regarding a seller's obligations to pay costs associated with the sale so long as the purchase price is within 7% of the Appraisal Value;

G. At the time of execution of the listing agreement, Mr. Arrighi and Mrs. Arrighi shall sign a Warranty Deed to be used for conveyance of the Arrighi



Case Nos. 2022-CA-010177-O and 2022-CA-00889
Settlement Agreement

Residence to be placed in escrow and sign a power of attorney Tucker Byrd to add the buyers' name(s) to the deed at closing and, if necessary, to sign all other closing documents and closing affidavits reasonably required by the closing agent to complete the sale; and,.

H.   To the extent either Mr. Arrighi or Mrs. Arrighi refuse to execute documents reasonably required by the closing agent to complete the sale or they otherwise prevent the successful closing of the sale in a timely manner, the DCS Parties shall be entitled without further notice to record a lien on the Arrighi Residence for the full amount of settlement proceeds paid before frustrating the sale. Furthermore, the DCS Parties shall be released from further settlement payment obligations under the agreement and it shall be entitled to foreclose such lien at any time thereafter.

6.   **Settlement Payment**.  The Settlement Payment shall be $3,250,000.00 payable as follows:

A.   Within 5 business days of Arrighi dismissing the Arrighi Case with prejudice and complying with section 5(A)-(B), and (G) above with respect to the Arrighi Residence, DCS shall pay Arrighi the sum of $1,000,000.00 (the "First Payment") by delivery to counsel of record for Arrighi in the DCS Case (the "Byrd Firm").

B.   Provided that Arrighi has performed all of the remaining obligations above in accord with each and all conditions set forth above in Sections 1-4 above and Sections 10 and 11 below, DCS Parties shall deliver payment in the sum of $750,000.00 (the "Second Payment") by delivery to the "Byrd Firm" within 5 business days following Arrighi serving notice that he is in compliance with all of the foregoing conditions. However, if Arrighi is not in compliance on the date DCS Parties receive his notice, the obligation to make delivery the Second Payment shall be tolled until Arrighi becomes compliant, e.g., if a website or social media site contains a representation that Arrighi is or was affiliated with any Defendant or DCS project, or if Arrighi is affiliated with any Juravin Entity, no payment shall be due until 5 business days after such non-compliance is cured and Defendants have confirmed compliance.

C.   Within five business days of the closing of the sale of the Arrighi Residence, DCS Parties shall deliver payment in the sum of $1,500,000.00 by delivery to the "Byrd Firm."



Case Nos. 2022-CA-010177-O and 2022-CA-00889
Settlement Agreement

    E.    **In the event DCS fails to make any payment when due the Byrd Firm shall provide a notice of default by email to counsel for DCS. DCS shall have ten (10) business days from the date the notice of default was delivered to cure such default failing which Arrighi shall be entitled to a Judgment against DCS for the entire balance of all payments due under this agreement plus liquidated damages in the amount of $250,000.00. All other provision of this Agreement shall remain in full force and affect regardless of any such payment default.**

7.    <u>**Revenue Sharing and Ownership Interests**</u>.  By executing this Agreement, Arrighi and Seaboard acknowledge and agree that they have no legal or beneficial ownership interest, joint venture interest, revenue sharing interest, rights to compensation, or any other rights or interests with respect to any of DCS Parties and RGDI, any of their related entities, and any real estate development projects that DCS Parties, or any related entity, have an interest in from the beginning of time to the present.  Arrighi and Seaboard further agree and acknowledge that the only rights or interests they have with respect to DCS Parties and RGDI are reflected in and governed by this Agreement and there are no separate written or oral agreements.

8.    <u>**Arrighi Release**</u>.  Upon the execution of this Agreement, and in consideration of the terms and conditions of this Agreement, except as otherwise set forth or contemplated herein, Arrighi and Seaboard, do hereby release, and forever discharge DCS Parties and RGDI, and all their respective heirs, parents, affiliates, subsidiaries, officers, directors, members, employees, agents and attorneys of and from any and all claims and demands whatsoever, known and unknown, disputed and undisputed, suspected and unsuspected, including without limitation all actions and causes of action, debts, damages, punitive damages, liens, costs, expenses, attorneys' fees or court costs, which they ever had, now have, or which any personal representative, successor, heir or assign of said parties, hereafter can, shall or may have, against each other for, upon or by reason of any and all matters, from the beginning of the world to the day of this release, including, but not limited to, all claims which were asserted or could have been asserted in the Arrighi Case. Nothing contained herein, however, shall release the Parties from the requirements of this Agreement or any injunction issued pursuant hereto.

9.    <u>**DCS Parties and RGDI Release**</u>. Upon the full compliance with this Agreement, and in consideration of the terms and conditions of this Agreement, except as otherwise set forth or contemplated herein, DCS Parties and RGDI, do hereby release, and forever discharge Arrighi and Seaboard, and all their respective heirs, parents, subsidiaries, officers, directors, employees, agents and attorneys of and

Page 7 of 11



Case Nos. 2022-CA-010177-O and 2022-CA-00889
Settlement Agreement

from any and all claims and demands whatsoever, known and unknown, disputed and undisputed, suspected and unsuspected, including without limitation all actions and causes of action, debts, damages, punitive damages, liens, costs, expenses, attorneys' fees or court costs, which they ever had, now have, or which any personal representative, successor, heir or assign of said parties, hereafter can, shall or may have, against each other for, upon or by reason of any and all matters, from the beginning of the world to the day of this Release, including, but not limited to, all claims which were asserted or could have been asserted in the RGDI Case. Nothing contained herein, however, shall release the Parties from the requirements of this Agreement or any injunction issued pursuant hereto.

10. **Non-Disparagement.** The Parties hereto agree to refrain from making disparaging comments about the past conduct of any other party hereto. However, nothing herein shall be construed to prevent any discussion or publication about the prior conduct of any party hereto in any pending or future legal proceeding. Future conduct is not covered by this Agreement.

11. **Dismissal.** Within 5 business days of the execution this Agreement, the Arrighi Case shall be dismissed with prejudice with each party bearing their own attorneys' fees and costs. In addition, within 5 business days of both i) the dismissal of the Arrighi Case with prejudice; and ii) the entry of the injunction required in Section 4 above, the RGDI case will be dismissed with prejudice with each party bearing their own attorneys' fees and costs. The court where the RGDI Case is pending shall retain jurisdiction to enforce the injunction and this Agreement.

12. **Merger and Integration.** This document sets forth the entire agreement by and between the Arrighi Parties, on the one hand, the DCS Parties and RGDI, on the other hand. All prior and contemporaneous conversations, agreements, understandings, covenants, representations, and negotiations between the Arrighi Parties and DCS Parties, or any of them, are merged herein and superseded hereby. No other agreements, covenants, representations, or warranties, express or implied, oral or written, have been made by any of the Arrighi Parties or the other DCS Parties or RGDI with respect to the subject matter hereof. All prior agreements between the Arrighi Parties and any or all of DCS Parties, if any, and/or RGDI are deemed null and void.

13. **Counterparts.** This Agreement can be signed in facsimile, email, or PDF counterparts, each of which shall be considered as an original.

14. **Governing Law.** This Agreement is made and entered into under the laws of the State of Florida and shall be interpreted, applied, and enforced under those laws.



RECEIVED 05/28/2024 10:04AM 4075591071 Bella Collina

05/28/2024 09:37AM 15618055344 Schar PAGE 01/01
RECEIVED 05/28/2024 09:33AM 15618055344 Schar
05/28/2024 10:01AM 4075591071 Bella Collina PAGE 01/01

Case Nos. 2022-CA-010177-O and 2022-CA-00889
Settlement Agreement

The Parties hereto agree that this Agreement shall be governed by the laws of the State of Florida. Venue shall be proper in Lake or Orange County so long as such court has subject matter jurisdiction.

15. **Attorney's Fees.** In the event of any litigation arising out of or relating to the interpretation or enforcement of the Parties' obligations under this Agreement, each party shall bear their own attorneys' fees and costs.

16. **No Presumption.** There shall be no drafting inference against any Party hereto in connection with this Agreement.

17. **Review by Counsel.** By signing this Agreement, the Parties represent that they have reviewed this Agreement with counsel or have been given an opportunity to review it with counsel and have chosen not to do so.

18. **Authority.** By signing this Agreement, the Parties represent that they have full authority to enter into this Agreement and Simonson is authorized to sign on behalf of Schar.

19. **Miscellaneous.** The Parties shall bear their respective costs, expenses, and attorneys' fees incurred in connection with this Agreement. This Agreement may be amended, modified, or otherwise changed only in a writing signed by all Parties hereto. This Agreement shall bind and inure to the benefit of the Parties hereto and their respective successors, predecessors, and assigns. The Parties agree to, on request of the other Party, to perform all acts reasonably necessary to effectuate this Agreement.

20. **Effective Date.** This Agreement shall be deemed effective on the last date of the dated signatures affixed below. Any and all Parties are authorized by each of them to complete the blanks in the first paragraph above by inserting the Effective Date once it is known.

Dwight C. Schar/date 05/28/2024

Paul E. Simonson/date. 05/28/2024

DCS Capital Investments, LLC/date 05/28/2024
By its manager: DCS Investment Holdings GP, LLC,
Paul E. Simonson, manager

Page 9 of 11

Case Nos. 2022-CA-010177-O and 2022-CA-00889
Settlement Agreement

DCS Real Estate Investments, LLC/date  05/28/2024
By its manager:  DCS Investment Holdings GP II,
LLC,
Paul E. Simonson, manager

DCS Real Estate Investments I, LLC/date  05/28/2024
By its manager:  DCS Investment Holdings GP,
LLC,
Paul E. Simonson, manager

DCS Real Estate Investments III, LLC/date  05/28/2024
By its manager:  DCS Investment Holdings GP,
LLC,
Paul E. Simonson, manager

DCS Real Estate Investments IV, LLC/date  05/28/2024
By its manager:  DCS Investment Holdings GP,
LLC,
Paul E. Simonson, manager

DCS Real Estate Investments V, LLC/date  05/28/2024
By its manager:  DCS V, Inc.,
Paul E. Simonson, President

DCS Real Estate Investments V-A, LLC/date  05/28/2024
By its manager:  DCS V-A, Inc.
Paul E. Simonson, President

DCS Real Estate Investments VI, LLC/date  05/28/2024
By its manager:  DCS Investment Holdings GP,
LLC,
Paul E. Simonson, manager

The Club at Bella Collina, LLC/date  05/28/2024

Page 10 of 11

Case Nos. 2022-CA-010177-O and 2022-CA-00889
Settlement Agreement

By its manager:  DCS Investment Holdings GP, LLC,
Paul E. Simonson, manager

28 MAY 2024

RG Developments and Investments, LLC/date
By Randall Greene, its manager

Seaboard Development, LLC/date 5/28/2024
By Richard Arrighi, its manager

Richard Arrighi/date  5/28/2024

Robin Arrighi/date 5/28/2024

EXHIBIT A

IN THE CIRCUIT COURT OF THE
5th JUDICIAL CIRCUIT IN AND
FOR LAKE COUNTY, FLORIDA.

CASE NO.:  2022 CA 000889

RG DEVELOPMENTS AND INVESTMENTS, LLC,
a Florida limited liability company,

      Plaintiff,

vs.

SEABOARD DEVELOPMENT, LLC,
a Florida limited liability company
and RICHARD ARRIGHI,

      Defendants,

And

DCS REAL ESTATE INVESTMENTS, LLC,
a Florida limited liability company,

      Additional Plaintiff, Intervenor.

_____/

# **PERMANENT INJUNCTION**

Before the Court is Plaintiffs', RG Developments and Investments, LLC, ("RGDI") and

DCS Real Estate Investments, LLC ("DCS") (together, the "Plaintiffs"), Complaint for, among

other things, a permeant injunction against the Defendants, Seaboard Development, LLC

("Seaboard"), and Richard Arrighi ("Arrighi), (the "Defendants"). Having reviewed the applicable

filings, including the parties' Settlement and Mutual Release Agreement ("Agreement") which

pertains to this case and another dispute, Arrighi v. DCS et. al., Case No., 2022-CA-010177-O in

1

EXHIBIT A

the Ninth Judicial Circuit in ad for Orange County, and being otherwise fully advised regarding the Plaintiffs' claim for an injunction, the Court **ORDERS**:

     1.     The moving party has submitted an affidavit asserting that Arrighi has violated a provision included within sections 1-3 of the Agreement and is therefore entitled to entry of this permeant injunction.

     2.     The Plaintiffs' claim for an injunction is **GRANTED**.

     3.     The Plaintiffs' business models are sales based in nature and rely on, among other things, reputation, referrals, and business relationships with third parties. The Plaintiffs' businesses are marketed online through various social media platforms including, but not limited to, Facebook, Instagram, and X (formally Twitter).

     4.     The evidence shows that there is a website and social media accounts created by or attributed to Arrighi. *See* https://www.richardarrighi.com, and social media accounts that use his name on (Facebook, X, You Tube, Pinterest, LinkedIn and Instagram (collectively the "Internet Publications"). The Internet Publications identify Arrighi as "*Founder of Bella Collina and partner of Dwight Schar (NVR Inc, Washington Football Team)*" and the Bella Collina Trademark is displayed thereon.

     5.     Arrighi, through Seaboard as a subcontractor of RGDI, previously provided services to DCS in its effort to develop some real estate projects including Bella Collina but was not DCS' or Dwight Schar's partner, was not an owner or founder of Bella Collina and has no proprietary interest in the Bella Collina Trademark and/or Wordmark which is lawfully owned by DCS.

2

EXHIBIT A

6.    DCS and its affiliates have been victims of extortion and defamation by Don Juravin and Anna Juravin (the "Juravins").

7.    Arrighi has provided guidance and cooperation to the Juravins by, without limitation:

    a.  allowing his name, likeness and misrepresentations about his affiliation with Dwight Schar and Bella Collina to be maintained on the Internet Publications;

    b.  by allowing the Bella Collina Trademark to be displayed by his likeness on the Internet publications;

    c.  by providing them with DCS' confidential information including its attorney client privileged communications;

    d.  by allowing himself to be listed as a member, officer and/or director of various entities owned and/or controlled by Don and/or Anna Juravin, including but not limited to those now or formally known as Dwight Schar Victims, Inc., Original Bible Foundation, CODE2GOD, and Loving God Without Religion.

    e.  by providing the Juravins with suggestions about things they could publish in furtherance of the effort to defame DCS and/or its affiliates;

    f.  by providing suggestion(s) to Don Juravin on how interfere with DCS' assistance to Don Juravin's Chapter 7 bankruptcy Trustee; and,

    g.  by providing the Juravins with several affidavits that cast DCS and its affiliates in a false light.

3

EXHIBIT A

8.    Arrighi acknowledges that the Juravin's attacks on Plaintiffs and their affiliates constitutes tortious interference with the Plaintiffs' existing and prospective business relationships and is damaging in ways that are not easily repaired or calculated.

9.    Arrighi acknowledges that his affiliation with the Juravin entities, the representations about his affiliation with Bella Collina and Dwight Schar on the Internet Publications and the aid, assistance and guidance that he provided to the Juravins is damaging in ways that are not easily repaired or calculated.

10.    The Plaintiffs have no adequate remedy at law because the damages to the Plaintiffs' businesses exist but will prove difficult to calculate. For example, companies or individuals who choose not to do business with, or use the services and facilities of, the Plaintiffs, may not be discovered or revealed. Private decisions to avoid associating with Bella Collina are the type of damage for which injunctive relief exists.

11.    Although the Plaintiffs may be able to prove some damages, conduct of the type described in the papers and the hearing tend to lead to incalculable damages. Put differently, the harm to the Plaintiffs' current and prospective business relationships, as a result of Arrighi' s actions, are incalculable and thus the full measure of damages are "speculative and unascertainable." *Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So. 2d 1371, 1373 (Fla. 4th DCA 1987). The harm therefore is irreparable and the remedy at law inadequate. *Id*.

12.    The Defendants have agreed to take specific actions and to refrain from taking specific actions as set forth in the parties' Agreement.

13.    The harm to Plaintiffs outweighs the harm that may come to the Defendants by entering this injunction.

4

EXHIBIT A

14.    Entry of this injunction will not disserve the public interest.

15.    Furthermore, this injunction promotes and protects the public interest because the Plaintiffs are entitled to injunctive relief as to the Juravins' use of Arrighi's assistance.  *see Chevaldina v. RKFL Mgmt, Inc*., 133 So. 3d 1086, 1090 (Fla. 3d DCA 2014) (commenting on how injunctive relief is appropriate in situations where defamatory words are made in furtherance of the commission of another intentional tort). There is no injury to the public that outweighs the Plaintiffs' right to injunctive relief. Moreover, the Court believes this order is narrowly-tailored to address tortious interference while leaving untouched Juravin's right to communicate to the public at large.

16.    Therefore, Arrighi and Seaboard, their officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them who receive actual notice of this injunction are **ENJOINED** from directly or indirectly collaborating with, aiding, allowing or assisting any person including the Juravins, their entities or either of them with any legal claims or publications by any of them that are directed the Plaintiffs, any DCS entity in which Dwight Schar is an owner, all their respective heirs, parents, subsidiaries, officers, directors, employees, agents and attorneys their affiliates, or projects including but not limited to "Bella Collina" or Dwight Schar, Paul Simonson, Randall Greene or any member of their respective families and any attorney representing any of DCS Parties including, but not limited to, James D. Ryan, Ryan Law Group PLLC and its attorneys, James A. Timko, the Dean Mead law firm and its attorneys; from representing or holding themselves out as current or former founders, owners, partners or affiliates of any DCS entity or project; maintaining or creating or contributing to any online content, including but not limited to social media postings that use any trademark or wordmark owned by

5

EXHIBIT A

any of the Plaintiffs, their affiliates and or their projects, including but not limited to "Bella Collina"; from revealing or sharing the information about or belonging to any of the DCS Parties identified in the Agreement ("DCS Parties"); and from representing or holding themselves out as current or former partners, associates or affiliates of any of the DCS Parties, RGDI, Dwight Schar, Spencer Schar, Paul Simonson, or Randall Greene.

17.     Arrighi shall use best efforts to have the Internet Publications taken down as required by the Agreement and to document those efforts.

18.     Arrighi shall forthwith comply with the obligations under the Agreement to produce to DCS and identify communications between himself and any member of the Juravin family and or any Juravin entity and to otherwise destroy every copy of any DCS business record or communication.

19.     No bond is required.


**IT IS FURTHER ORDERED AND ADJUDGED** that the above Permanent Injunction shall remain in effect until further order of this Court and the court retains jurisdiction to enforce it.

**ORDERED** in Chambers, at Lake County, Florida, this _____ day of _____, 2024.

_____
DAN R. MOSLEY, Circuit Judge


## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED this _____ day of _____, 2024, that a true and correct copy of the foregoing was served via Florida E-filing Portal to all counsel of record.

6

EXHIBIT A

_____

Judicial Assistant

**EXHIBIT 2**

No. _____

IN THE SUPREME COURT OF FLORIDA

William M. Windsor, Petitioner

v.

Clayton & McCulloh, P.A., Russell E. Klemm, Neal McCulloh,
Kenneth M. Clayton, Alan Schwartzseid, Brian Hess, Coach Houses
at Leesburg Condominium Association, Inc., Gary Hansen, Isabel
Campbell, Sergio Naumoff, Ed Broom, Jr., Sue Yokley, and Wendy
Krauss,

Respondents.

**PETITION FOR WRIT OF PROHIBITION**

Circuit Court of the Fifth Judicial District
Case No. 2021-CA-0766

**William M. Windsor, Petitioner**
100 East Oak Terrace Drive, Unit B3, Leesburg, Florida 34748
352-577-9988 - windsorderivative@gmail.com

**Counsel for the Respondents:**

None have Appeared.

RECEIVED, 06/01/2021 04:44:28 AM, Clerk, Supreme Court

1

# **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................. 2

INTRODUCTION .......................................................................... 3

BASIS FOR INVOKING JURISDICTION........................................... 4

STATEMENT OF THE FACTS AND PROCEDURAL HISTORY.......... 5

NATURE OF RELIEF SOUGHT ...................................................12

ARGUMENTS .............................................................................12

CONCLUSION............................................................................ 28

CERTIFICATE OF COMPLIANCE ................................................ 29

VERIFICATION AND CERTIFICATE OF GOOD FAITH.................. 29

CERTIFICATE OF SERVICE........................................................ 30

## **INTRODUCTION**

1.     This PETITION FOR WRIT OF PROHIBITION is filed

Pursuant to Rule 9.100.

2.     Petitioner, William M. Windsor ("Petitioner" or "Windsor"),

respectfully petitions this Court for a Writ of Prohibition prohibiting

Judge Dan R. Mosley from presiding as a circuit court judge in the

matter of William M. Windsor vs. ("DEFENDANTS") in Case No.

2021-CA-0766 or in any other matter involving Windsor and

ordering a newly-assigned judge to reconsider the orders of Judge

Dan R. Mosley, preferably from another county.

3.     This Petition follows the denial of a timely-filed motion to

disqualify in which Windsor established that he has an objectively

reasonable fear that he will not receive a fair trial from Judge Dan

R. Mosley in Case No. 35-2021-CA-0766 and previously in Case No.

35-2020-CA-1438.  The Petitions were premised on Florida Rules of

Judicial Administration ("FRJA") Rule 2.330, Florida Statutes, and

the Florida Code of Judicial Conduct, all of which require that a

judge disqualify himself once a party has established a reasonable

fear that he will not obtain a fair hearing.  See FRJA 2.160; Florida

Statutes §§ 38.02, 38.10; Florida Code of Judicial Conduct ("FCJC"), Canon 3-B (7) and E. 2 I.

4.    This Petition follows extensive wrongdoing by Judge Dan R. Mosley in Case No. 35-2020-CA-1438 that was detailed in Case No. 5D21-0310, referenced and incorporated herein as if attached hereto.

5.    This Petition follows the Appeal of Lake County Circuit Court Case No. 35-2020-CA-1438 detailed in Case No. 5D21-0410, referenced and incorporated herein as if attached hereto.

6.    This Petition follows the issuance of an order denying the Motion to Disqualify in Case No. 35-2021-CA-0766. [APPENDIX 1.]

## **BASIS FOR INVOKING JURISDICTION**

7.    This is an original action under Rule 9.100(a) of the Florida Rules of Appellate Procedure ("FRAP.")  This Court has original jurisdiction pursuant to FRAP 9.030(a)(3) and Article V, Section 3(b)(7), Florida Constitution. See *Bundy v. Rudd*, 366 So. 2d 440 (Fla. 1978) (granting writ where circuit court erroneously denied motion to recuse judge).

4

## STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

8.     The nature of the Lake County Circuit Court Case No.
35-2021-CA-0766 is a derivative action for legal malpractice,
professional negligence, fraud, conspiracy, breach of contract of
governing documents, breach of fiduciary duty, breach of contract,
and punitive damages. [APPENDIX 2.] [1]

9.     Case No. 35-2021-CA-0766 was filed in the Fifth Judicial
Circuit in Lake County, Florida on 4/30/2021.  It was filed by
William M. Windsor, Pro Se.  The case was assigned to Judge Dan
R. Mosley.  This was terrible news as Windsor knows that Judge
Dan R. Mosley is terminally biased against him.

10.     Windsor is a 72½-year-old man who was disabled when
hit by an 18-wheeler at 70-miles-per-hour.  He has four herniated
disks in his back, five herniated disks in his neck and an inoperable
abdominal injury, Diastasis Recti.  He is losing the ability to walk.
He has been forced to sue the trucker and the trucking company in
an effort to obtain the money needed for surgeries.  Windsor is the

---

[1] The AFFIDAVIT and EXHIBITS are not provided here due to the
size and the fact that the exhibits are on a Flash Drive.  If the Court
wants them, the Petitioner will be happy to provide them.

former President of a Goldman Sachs company and the former

CEO of a Mitt Romney company. He is now indigent, lives alone,

and does all of his legal work without any help whatsoever. Windsor

is not an attorney, but he has independently studied law and has

represented himself in various actions for over 15 years, including

several petitions to the United States Supreme Court. Windsor

produced and directed a documentary film about government,

judicial, and law enforcement corruption. He has been regarded as a

leading authority on judicial corruption.

11.   On 5/4/2021 at 7:47 a.m., Windsor filed the Complaint

that initiated Case No. 2021-CA-0766. [APPENDIX 2.]

12.   On 5/4/2021 at 7:47 a.m., Windsor filed an Application

for Determination of Civil Indigency. [APPENDIX 3.]

13.   On 5/4/2021 at 7:47 a.m., Windsor's Application for

Determination of Civil Indigency was denied. [APPENDIX 4.] It seems

the Clerk of Court automatically denies everything.

14.   On 5/5/2021 at 11:31 a.m., Windsor filed an Amended

Application for Determination of Civil Indigency. [APPENDIX 5.]

15.   On 5/5/2021 at 11:31 a.m., Windsor's Amended

Application for Determination of Civil Indigency was denied.

[APPENDIX 6.] It seems the Clerk of Court automatically denies everything.

16.   On 5/6/2021, Windsor filed a Verified Motion to Disqualify Judge Dan R. Mosley in Case No. 35-2021-CA-0766. [APPENDIX 7.]

17.   On 5/6/2021 at 5:16 a.m., Windsor sent an email to Judge Dan R. Mosley's judicial assistant, Andrea Coluccio, with a copy of the Verified Motion to Disqualify Judge Dan R. Mosley in Case No. 35-2021-CA-0766. [APPENDIX 8.]

18.   On 5/10/2021 at 7:20 p.m., Windsor filed a Notice of Filing for a Review of Denial of Indigent Status. [APPENDIX 9.] Judge Dan R. Mosley was obligated to review this immediately, and he has ignored it.

19.   On 5/18/2021 at 4:42 p.m., Judge Dan R. Mosley entered the Order denying Windsor's Motion to Disqualify in Case No. 35-2021-CA-0766. [APPENDIX 1.] This was the first motion to disqualify, and Judge Dan R. Mosley did not address legal sufficiency whatsoever.

20.   Needless to say, this caused Windsor to again come to the realization on 5/18/2021 that Judge Dan R. Mosley was prejudiced

7

and biased when he once again refused to disqualify himself with one word "**DENIED**." [APPENDIX 1.]

21.  On 6/1/2021, Windsor filed this Petition for Writ of Prohibition regarding Judge Dan R. Mosley's Order denying Windsor's Motion to Disqualify.  Judge Dan R. Mosley was served with a copy.

22.  This is Windsor's second appellate go-round with Judge Dan R. Mosley.  Windsor took Judge Dan R. Mosley's wrongdoing to the Fifth District Court of Appeal on 1/28/2021 Case No. 5D21-0310.)

23.  On 2/8/2021, Judges Einsaugle, Traver, and Nardella of the 5DCA entered an Order denying the Petition for Writ of Mandamus in Case No. 5D21-0310.

24.  On 2/8/2021, Windsor filed a Request for Findings of Fact and Conclusions of Law in 5D21-0310 in the 5DCA.

25.  On 2/10/2021, Windsor filed a Motion for Issuance of a Written Opinion, Rehearing, and for Rehearing En Banc in 5D21-0310 in the 5DCA.

26.  On 2/10/2021, Windsor filed another Verified Motion to Disqualify Judge Dan R. Mosley in Case No. 35-2020-CA-1438.

8

27.    On 2/11/2021, Windsor filed a Notice of Appeal of Lake County Circuit Court Case No. 35-2020-CA-1438.  The Appeal was assigned Case No. 5D21-0410 in the 5DCA.  It was docketed on 2/11/2021 and shown in Book 5642, Page 983.  That appeal is pending, but Windsor is unable to pay for the Record, and the Clerk of Court is violating the Florida Statute on civil indigency.  On 5/7/2021, Windsor filed a Petition for Writ of Mandamus with this Court (Case No. SC21-680).  Windsor is likely to lose all of his cases and be forced into bankruptcy if he isn't declared indigent.

28.    On 2/12/2021, Judge Dan R. Mosley entered an Order in Case No. 35-2020-CA-1438 Granting Clayton & McCulloh's Motion to Require Pro Se Plaintiff's Submissions to the Court be Signed by a Member of the Florida Bar.  This made Windsor one of only 20 Floridians in history (not prisoners or attorneys in disbarment proceedings) to be denied the right to represent themselves as pro se plaintiffs.  This made Windsor one-in-a-million.

29.    In this purported Order, Judge Dan R. Mosley acknowledged Windsor's filing of the Appeal.

30.    On 2/16/2021, Windsor filed an Emergency Motion to Declare Invalid the Order Issued by Judge Dan R. Mosley after the Case was on Appeal in Case No. 5D21-0410 in the 5DCA.

31.    On 2/17/2021, Windsor electronically filed an Amended Motion to Disqualify Judge Dan R. Mosley. The Clerk of the Court of Lake County did not allow it to be docketed. The Motion was served on all parties and on the judge's judicial assistant, Andrea Coluccio.

32.    On 2/17/2021, Windsor electronically filed an Amended Notice of Appeal to incorporate the 2/12/2021 order. The Clerk of the Court did not allow it to be docketed. The Notice was served on all parties and on the judge's judicial assistant, Andrea Coluccio. The 5DCA refused to allow Windsor to file the Amended Notice of Appeal; he was told it had to be filed in the Circuit Court (where he is not being allowed to file).

33.    On 2/18/2021, the 5DCA Panel of Judges Evander, Edwards, and Horne entered an Order in Case No. 5D21-0410 that says the "Trial Court's Order Granting C&M's Emergency Motion to Require Pro Se Plaintiff's Submissions to the Court be Signed by a

Member of the Florida Bar, rendered February 12, 2021 is affirmed."
This was totally bizarre.

34.    On 2/19/2021, Windsor filed a Motion for Issuance of a
Written Opinion, Rehearing, and for Rehearing En Banc in 5DCA
Case No. 5D21-0410.

35.    On 2/19/2021, Judges Evander, Edwards, and Harris of
the 5DCA entered an Order in Case No. 5D21-0410 denying the
Appellant's Motion for Issuance of a Written Opinion, Rehearing,
and for Rehearing En Banc.

36.    On 2/24/2014, the 5DCA Panel of Eisnaugle, Traver,
and Nardella entered an order denying Windsor's Request for
Findings of Fact and Conclusions of Law in 5D21-0310.

37.    On 4/5/2021, this Court denied the petition in Case No.
SC21-342.  Windsor didn't understand the decision.  He knows he
has been terribly wronged by Judge Dan R. Mosley and by the Fifth
District Court of Appeal.

38.    In 14 years of studying many thousands of cases,
Windsor has never discovered a case where the appellate court
affirmed a decision when it had nothing before it to affirm.  But the
5DCA did so.

39.    The Order in Case No. 5D21-0410 was issued on February 18, 2021. It merely says: "… affirmed." What was affirmed? The Order also includes the word "granted." What was granted?

40.    Windsor does not understand why Fifth District judges are aiding and abetting Judge Dan R. Mosley in his corrupt acts. Windsor has bypassed the Fifth District to bring this matter directly to this Court.

41.    Case No. 5D21-0310, 5D21-0410, 5D21-0747, and SC21-342 are referenced ad incorporated herein as if attached hereto.

## NATURE OF RELIEF SOUGHT

42.    The nature of the relief sought in this Petition is a Writ of Prohibition prohibiting Judge Dan R. Mosley from conducting proceedings in any matter involving Windsor.

## LEGAL ARGUMENT

**ISSUE #1: WINDSOR'S MOTION TO DISMISS IN CASE NO. 35-2021-CA-0766 WAS NOT RULED LEGALLY INSUFFICIENT, SO THE DISQUALIFICATION OF JUDGE DAN R. MOSLEY MUST BE ORDERED.**

43.    Judge Dan R. Mosley did not address the legal sufficiency.

44.    The Motion to Disqualify had to be granted.  There was no option as that was Judge Dan R. Mosley's fundamental requirement.

45.    The test to be used by the trial court in reviewing a motion for disqualification has been determined by this Court.  In *MacKenzie v. Super Kids Bargain Store, Inc.*, 565 So.2d 1332 (Fla.1990), this Court held that the facts alleged in a motion to disqualify need only show a movant's well-grounded fear that the movant will not receive a fair trial.  The test to be utilized is whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial. *MacKenzie*, 565 So.2d at 1335; see also *Fischer v. Knuck*, 497 So.2d 240 (Fla.1986).

46.    In reviewing the legal sufficiency of a motion for disqualification, i.e. whether the movant has alleged facts giving rise to a well-founded fear that the movant will not receive a fair trial, the facts must be taken as true and must be viewed from the movant's perspective. See *Livingston*, 441 So.2d 1083 ("The question of disqualification focuses on those matters from which a

13

litigant may reasonably question a judge's impartiality rather than the judge's perception of the judge's ability to act fairly and impartially.").

47.    In order to decide whether the motion is legally sufficient, Windsor had to only show: "a well-grounded fear that he will not receive a fair [hearing] at the hands of the judge.  It is not a question of how the judge feels; it is a question of what feeling resides in the affiant's mind and the basis for such feeling." *State ex rel. Brown v. Dewell*, 131 Fla. 566, 573, 179 So. 695, 697- 98 (1938). See also *Hayslip v. Douglas*, 400 So. 2d 553 (Fla. 4th DCA 1981).  The question of disqualification focuses on those matters from which a litigant may reasonably question a judge's impartiality rather than the judge's perception of his ability to act fairly and impartially. *State v. Livingston*, 441 So. 2d 1083, 1086 (Fla. 1983)

48.    No judge under any circumstances is warranted in sitting in the trial of a cause whose neutrality is shadowed or even questioned. *Dickenson v. Parks*, 104 Fla. 577, 140 So. 459 (1932); State ex rel. *Aguiar v. Chappell*, 344 So.2d 925 (Fla. 3d DCA 1977). *State v. Steele*, 348 So. 2d 398, 401 (Fla. 3rd DCA 1977).

14

49.    The United States Supreme Court has explained that in deciding whether a particular judge cannot preside over a litigant's trial: the inquiry must be not only whether there was actual bias on respondent's part, but also whether there was "such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964). "Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties," but due process of law requires no less. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). *Taylor v. Hayes*, 418 U.S. 488, 501 (1974).

50.    The appearance of impropriety violates state and federal constitutional rights to due process. A fair hearing before an impartial tribunal is a basic requirement of due process. See *In re Murchison*, 349 U.S. 133 (1955). "Every litigant[] is entitled to nothing less than the cold neutrality of an impartial judge." *State ex rel. Mickle v. Rowe*, 131 So. 331, 332 (Fla. 1930). Absent a fair tribunal, there can be no full and fair hearing.

15

51.   But none of this should matter as Judge Dan R. Mosley failed to do what he was required to do.

52.   Judge Dan R. Mosley gave no explanation [APPENDIX 1, P. 1] as to legal sufficiency.  Judge Dan R. Mosley was simply inflicting his bias and prejudice yet again.

53.   Massive case law supports the statutes and provides that Judge Dan R. Mosley must be sent packing.

54.   A Motion to Disqualify is governed by Florida Statute 38.10 and FRJA 2.330, and Windsor met all requirements. [APPENDIX 7.]

> "A motion to disqualify is governed substantively by section 38.10, Florida Statutes . . . and procedurally by Florida Rule of Judicial Administration 2.330." *Gregory v. State*, 118 So.3d 770, 778 (Fla. 2013) (quoting *Gore v. State*, 964 So.2d 1257, 1268 (Fla. 2007)). "The statute requires that the moving party file an affidavit in good faith 'stating fear that he or she will not receive a fair trial . . . on account of the prejudice of the judge' as well as 'the facts and the reasons for the belief that any such bias or prejudice exists." *Peterson v. State*, 221 So.3d 571, 581 (Fla. 2017) (quoting § 38.10, Fla. Stat. (2014)).

> "The facts and reasons for the belief of prejudice must be taken as true, and **the judge may only pass on the legal sufficiency of the motion and supporting affidavits to invoke the statute**." *Raybon v. Burnette*, 135 So.2d 228 (Fla. 2d DCA 1961). Section 38.10 creates a substantive right to seek the disqualification of a trial judge, but the process of the disqualification is procedural. *Livingston v. State*, 441 So.2d 1083 (Fla. 1983). [**emphasis added**.]

16

55.   So says this Court -- *Brown v. St. George Island, Ltd.*, 561 So.2d 253, 15 Fla. L. Weekly S231 (Fla. 04/19/1990).

(See also *Rogers v. State*, 630 So.2d 513, 18 Fla. L. Weekly S413 (Fla. 07/01/1993).)

(From the 5th DCA, see *Novo v. State*, 5D19-2290 (Fla.App. Dist.5 08/28/2019); *Dura-Stress, Inc. v. Law*, 634 So.2d 769, 19 Fla. L. Weekly D729 (Fla.App. Dist.5 03/31/1994); *Scholz v. Hauser*, 657 So.2d 950, 20 Fla. L. Weekly D1633 (Fla.App. Dist.5 07/13/1995); *Robinson v. State*, 5D19-2372 (Fla.App. Dist.5 08/28/2019); *Lake v. Edwards*, 501 So.2d 759, 12 Fla. L. Weekly 444 (Fla.App. Dist.5 02/05/1987).)

56.   Windsor showed that any reasonably prudent person would be in fear of not receiving a fair trial.  The evidence in Case No. 35-2021-CA-0766 is overwhelming, and the evidence in Case No. 35-2020-CA-1438 was overwhelming.  The only evidence is Windsor's evidence.

57.   The Motion to Disqualify was legally sufficient:

58.   **MOTION AND AFFIDAVIT:** The Motion to Disqualify was in writing.  Windsor filed an Affidavit of Prejudice stating his fear that he would not receive a fair trial due to the prejudice of Judge Dan R. Mosley.  It provided the facts and the reasons for the belief that such bias and prejudice exist.  This Motion was signed under oath.  A Certificate of Good Faith was also filed [APPENDIX 7].  The

17

Motion to Disqualify was filed with the Clerk, and a copy was sent by email to Judge Dan R. Mosley c/o his assistant, Andrea Coluccio. At 5:16 a.m. on 5/6/2021, Windsor also sent Ms. Andrea Coluccio an email asking her to give Judge Dan R. Mosley the Motion to Disqualify. [APPENDIX 8.]

59.    **GROUNDS:** The Motion to Disqualify showed that Windsor fears he will not receive a fair trial because of specifically described prejudice or bias of Judge Dan R. Mosley. Windsor feels quite certain that the unrestrained actions of Judge Dan R. Mosley will send Windsor to an early grave.

60.    **TIME:** The Motion to Disqualify was filed within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the Motion and was promptly presented to the Court for an immediate ruling. It was filed within six (6) days.

61.    FRJA 2.330 (f) Determination — Initial Motion requires:

**"The judge** against whom an initial motion to disqualify under subdivision (d)(1) is directed **shall determine only the legal sufficiency of the motion** and shall not pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall immediately enter an order granting disqualification and proceed no further in the action. If any motion is legally insufficient, an order denying the motion shall immediately be

18

entered. No other reason for denial shall be stated, and an order of denial shall not take issue with the motion" [**emphasis added**.]

62.   Judge Dan R. Mosley violated Rule 2.330.  The Motion was absolutely legally sufficient.

63.   In passing upon a motion for disqualification, the presiding judge must only state whether the motion is legally sufficient or not. *See* Fla. R. Jud. Admin. 2.330(f). (*Rollins v. Baker*, 683 So.2d 1138, 1140 (Fla. 5th DCA 1996).)

64.   Judge Dan R. Mosley failed to state whether the motion was legally sufficient or not.  Judge Dan R. Mosley simply stated this in his order: "Plaintiff's Verified Motion to Disqualify is **DENIED**."

65.   Judge Dan R. Mosley ignored the rules and his orders in favor of DEFENDANTS.  Judge Dan R. Mosley doesn't even respect or comply with his own orders when his bias and prejudice are at stake.

**ISSUE #2:  THE IMPARTIALITY OF JUDGE DAN R. MOSLEY MUST BE QUESTIONED, SO THE DISQUALIFICATION OF JUDGE DAN R. MOSLEY MUST BE ORDERED.**

66.    An objective observer, lay observer, and/or disinterested observer must entertain significant doubt of the impartiality of Judge Dan R. Mosley.

67.    The Code of Judicial Conduct required that Judge Dan R. Mosley disqualify himself.  Code of Judicial Conduct Canon 3-C(1); *State ex rel. Brown v. Dewell,* 131 Fla. 566, 573, 179 So. 695, 697-98 (1938); *Hayslip v. Douglas,* 400 So.2d 553 (Fla. 4th DCA 1981).

68.    Judge Dan R. Mosley failed to address any of the legal grounds for disqualification.

69.    The Motion to Disqualify asked that Judge Dan R. Mosley be disqualified from the case under Florida Statute 38.10, Florida Rule of Judicial Administration 2.330, the Florida Code of Judicial Conduct, all other relevant statutory and state and federal case law, as well as the U.S. Constitution and the Constitution of the State of Florida.

70.    Judge Dan R. Mosley did not identify if he considered any of the legal grounds. [APPENDIX 1, P.1.]

71.    Judge Dan R. Mosley did not consider Canon 2 or Canon 3 of the Code of Judicial Conduct, other relevant statutory and

20

state and federal case law, as well as the First, Fifth, Sixth, Eighth,
and Fourteenth Amendments to the U.S. Constitution, the Due
Process Clause of the Fifth Amendment to the Constitution, the
Constitution of the State of Florida, and the Court's inherent
powers.

72.    Windsor is entitled to an impartial judge, and that isn't
Judge Dan R. Mosley.

> See *Hayslip v. Douglas,* 400 So.2d at 557 (quoting *State ex rel.
> Davis v. Parks,* 141 Fla. 516, 194 So. 613, 615 (1939); ' (*James
> v. Theobald,* 557 So.2d 591, 15 Fla. L. Weekly D215 (Fla.App.
> Dist.3 01/16/1990); *Management Corporation of America, Inc.
> v. Grossman,* 396 So.2d 1169 (Fla. 3rd DCA 1981).

73.    Judge Dan R. Mosley failed to provide due process and
equal protection to Windsor.

74.    Judge Dan R. Mosley has violated Windsor's civil and
Constitutional rights under color of law.

> "...[t]rial before an 'unbiased judge' is essential to due
> process." *Johnson v. Mississippi,* 403 U.S. 212, 216 (1971);
> accord *Concrete Pipe & Prods. V. Constr. Laborers Pension
> Trust,* 508 U.S. 602, 617 (1993) (citation omitted). (See also
> *Levine v. United States,* 362 U.S. 610, 80 S.Ct. 1038 (1960),
> citing *Offutt v. United States,* 348 U.S. 11, 14, 75 S. Ct. 11, 13
> (1954); *Mathews v. Eldridge,* 424 U.S. 319, 344 (1976); *Peters
> v. Kiff,* 407, U.S. 493, 502 (1972)

75.    Windsor has just cause to believe that he cannot be given

a fair trial. That's as polite as Windsor can ACT.

76.    The due process clauses of both the Florida and the United States Constitutions guarantee a party an impartial and disinterested tribunal in civil cases. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613 (1980). See *In re United States of America*, 441 F.3d at 66 (citing *In re Murchison*, 349 U.S. 133 (1955); *Taylor v. Hayes*, 418 U.S. 488, 501 (1974). See also *Murchison*, 349 U.S. at 136.

77.    Judge Dan R. Mosley has effectively denied Windsor's rights of the equal protection under the law under Article VI of the Constitution.

78.    Judge Dan R. Mosley violated Windsor's Constitutional rights.

79.    The Sixth Amendment provides the Constitutional right to self-representation. That right should be enjoyed without fear of harassment or judicial prejudice. Furthermore, no law, regulation, or policy should exist to abridge or surreptitiously extinguish that right. *Pro Se* Litigants allegedly have no less of a right to effective due process as those who utilize an attorney. I'm sorry to report that's a myth.

22

80.   The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision-making process. See *Carey v. Piphus*, 435 U.S. 247, 259-262, 266-267 (1978). The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. See *Matthews v. Eldridge*, 424 U.S. 319, 344 (1976). At the same time, it preserves both the appearance and reality of fairness, 'generating the feeling, so important to a popular government, that justice has been done,' *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 172, (1951) (Frankfurter, J., concurring), by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

23

81. Canon 3E, Fla. Code Jud. Conduct, and Rule 2.160, Fla. R. Jud. Admin., mandate that a judge disqualify himself in a proceeding "in which the judge's impartiality might reasonably be questioned." The disqualification rules require judges to avoid even the appearance of impropriety: It is the established law of this State that every litigant is entitled to nothing less than the cold neutrality of an impartial judge. It is the duty of the court to scrupulously guard this right of the litigant and to refrain from attempting to exercise jurisdiction in any manner where his qualification to do so is seriously brought into question. The exercise of any other policy tends to discredit and place the judiciary in a compromising attitude which is bad for the administration of justice. *Crosby v. State*, 97 So.2d 181 (Fla. 1957); *State ex rel. Davis v. Parks*, 141 Fla. 516, 194 So. 613 (1939); *Dickenson v. Parks*, 104 Fla. 577, 140 So. 459 (1932); *State ex rel. Mickle v. Rowe*, 100 Fla. 1382, 131 So. 3331 (1930).

82. For due process and to secure the Constitutional rights of Windsor, judges may not take the law into their own hands. But this is precisely what Judge Dan R. Mosley has done. He has ignored the law, ignored the facts, and claimed laws and rules

24

provide something that they do not provide, while abusing and disadvantaging Windsor.

83. For due process to be secured, the laws must operate alike upon all and not subject the individual to the arbitrary exercise of governmental power. (*Marchant v. Pennsylvania R.R.*, 153 U.S. 380, 386 (1894).) Judge Dan R. Mosley has violated Windsor's rights by using his power to inflict his bias.

84. For due process, Windsor has the right to protections expressly created in statute and case law. Due process allegedly ensures that the government will respect all of a person's legal rights and guarantee fundamental fairness.

85. Due process requires an established course for judicial proceedings designed to safeguard the legal rights of the individual. Action denying the process that is "due" is unconstitutional. Inherent in the expectation of due process is that the judge will abide by the rules. Judge Dan R. Mosley has interfered with the process and violated rules for the purpose of damaging Windsor.

86. An inherent Constitutional right is the honesty of the judge. Judge Dan R. Mosley has not been honest. Judge Dan R. Mosley has violated Canon 2 and other Canons of the Code of

Judicial Conduct.

87.   Due process guarantees basic fairness and to make people feel that they have been treated fairly. Windsor has not been treated fairly.

88.   Judge Dan R. Mosley has effectively denied Windsor's rights of equal protection under the law.

89.   Windsor's Affidavit of Prejudice attached to the Motion to Disqualify stated very clearly the facts and reasons for the belief that bias and prejudice exists. Dates, times, places, circumstances, and statements are itemized. The reasons for the belief are material and stated with particularity. A Certificate that the Motion to Disqualify was made in Good Faith was filed. [APPENDIX 7.]

90.   An objective observer, lay observer, and/or disinterested observer must entertain significant doubt of the impartiality of Judge Dan R. Mosley. A reasonably prudent person will be in fear of not receiving a fair and impartial trial. They'd move to another county.

91.   It is obvious to Windsor that Judge Dan R. Mosley doesn't care about the facts and doesn't want to apply the law.

92.   The United States Constitution guarantees an unbiased

26

judge who will always provide litigants with full protection of ALL RIGHTS. Judge Dan R. Mosley is biased against Windsor. He demonstrated this repeatedly since 1/27/2021.

93.    Judge Dan R. Mosley has shown bias and prejudice and failed to properly respond to a Moton to Disqualify, so he must be disqualified.

94.    The disqualification of Judge Dan R. Mosley requires a newly-assigned judge. This judge is asked to reconsider the orders of Judge Dan R. Mosley that are not declared void by this Court.

95.    Windsor requests a judge from another county because Judge Dan R. Mosley, Judge James R. Bagley, Judge G. Richard Singletary, and Judge Emily Curington are conspiring to inflict bias against Windsor.

## A WRIT OF PROHIBITION IS APPROPRIATE

96.    For the reasons discussed above, relief by a Writ of Prohibition is appropriate.

97.    There are no other adequate means to obtain the relief Windsor seeks.

## **CONCLUSION**

WHEREFORE, Petitioner, William M. Windsor, respectfully urges the Court to Court for the issuance of a Writ of Prohibition prohibiting Judge Dan R. Mosley from presiding in Case No. 2021-CA-0766 or in any other matter involving Windsor; ordering a newly-assigned judge from another county; directing the new judge to review Windsor's civil indigence request; and granting such other relief as the Court feels is appropriate.

Respectfully submitted, this 1st day of June, 2021,

**William M. Windsor**
100 East Oak Terrace Drive, Unit B3, Leesburg, Florida 34748
windsorderivative@gmail.com * 352-577-9988

## VERIFICATION AND CERTIFICATE OF GOOD FAITH

Pursuant to Florida Statute 92.525, under penalties of perjury, I declare that I have read the foregoing document and that all facts in it are true.

I hereby certify that this Petition is being filed in good faith.  I also verify under penalty of perjury pursuant to 28 U.S.C. §1746 that all statements of fact contained herein are true and based upon my personal knowledge.

Certified this 1st day of June, 2021,

**William M. Windsor**
**Pro Se**

## CERTIFICATE OF COMPLIANCE

I hereby certify that this pleading has been prepared in Bookman Old Style 14-point font, one of the fonts and point selections approved by this Court.  This Petition contains 4,820 words.

Certified this 1st day of June, 2021,

**William M. Windsor**

29

## **PROOF OF SERVICE**

I, William M. Windsor, do swear or declare that on this date, 1st day of June, 2021, I have served the enclosed PETITION FOR WRIT OF PROHIBITION on each party to the above proceeding or that party's counsel, and on every other person required to be served, by email.

The names and addresses of those served are as follows:

Jeffrey Partlow and Christina Bredahl Gierke
COLE, SCOTT & KISSANE, P.A.
Tower Place, Suite 400, 1900 Summit Tower Boulevard,
Orlando, Florida 32810
Telephone 321-972-0025, Facsimile 321-972-0099
christina.gierke@csklegal.com, jeffrey.partlow@csklegal.com
allison.barkett@csklegal.com, kirbie.caruso@csklegal.com,
victoria.mcfarland@csklegal.com

Maura F. Krause
GOLDBERG SEGALLA, LLP
800 N. Magnolia Ave., Suite 450, Orlando, FL 32803, 407-458-5600
mkrause@goldbergsegalla.com, jkingsley@goldbergsegalla.com
sherndon@goldbergsegalla.com, psouza@goldbergsegalla.com,
pborges@goldbergsegalla.com

CLAYTON & McCULLOH, P.A., The Clayton & McCulloh Building,
1065 Maitland Center Commons Blvd., Maitland, FL 32751,
kclayton@clayton-mcculloh.com.

KENNETH M. CLAYTON, Clayton & McCulloh, P.A., The Clayton &
McCulloh Building, 1065 Maitland Center Commons Blvd.,
Maitland, FL 32751, kclayton@clayton-mcculloh.com.

BRIAN HESS, Law Offices of John L. Di Masi, P.A., 801 North Orange Avenue, Suite 500, Orlando, Florida 32801-1014, bhess@orlando-law.com.

NEAL McCULLOH, Clayton & McCulloh, P.A., The Clayton & McCulloh Building, 1065 Maitland Center Commons Blvd., Maitland, FL 32751, nmcculloh@clayton-mcculloh.com.

RUSSELL E. KLEMM, Clayton & McCulloh, P.A., The Clayton & McCulloh Building, 1065 Maitland Center Commons Blvd., Maitland, FL 32751, rklemm@clayton-mcculloh.com.

ALAN SCHWARTZSEID, Clayton & McCulloh, P.A., The Clayton & McCulloh Building, 1065 Maitland Center Commons Blvd., Maitland, FL 32751, aschwartzseid @clayton-mcculloh.com.

COACH HOUSES AT LEESBURG CONDOMINIUM ASSOCIATION, INC., 1419 Beverly Point Road, Leesburg, Florida 34748, rklemm@clayton-mcculloh.com.

ISABEL CAMPBELL. 6754 Crescent Lake Drive, Lakeland, Florida 33813, isabelmcampbell@gmail.com.

SERGIO NAUMOFF, 100 East Oak Terrace Drive Unit F3, Leesburg, Florida 34748, sergret62@yahoo.com.

ED BROOM, JR., 100 East Oak Terrace Drive Unit B1, Leesburg, Florida 34748, boardebroomjr@outlook.com.

SUE YOKLEY, 100 East Oak Terrace Drive Unit C3, Leesburg, Florida 34748, knitworthyorknot@gmail.com.

WENDY KRAUSS, 100 East Oak Terrace Drive Unit E4, Leesburg, Florida 34748, wndkrauss@comcast.net.

GARY HANSEN, 100 East Oak Terrace Drive, Unit C1, Leesburg, Florida 34748, gsh842@hotmail.com.

**Judge Dan R. Mosley**
c/o Ms. Coluccio - Judicial Assistant to Judge Dan R. Mosley
acoluccio@circuit5.org

Executed the 1st day of June, 2021.

**William M. Windsor**
**Pro Se**