# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**DON KARL JURAVIN,**

      **Plaintiff,**

**v.**                                                    **Case No: 5:24-cv-618-PGB-PRL**

**JUDGE CARY F. RADA, JUDGE DAN R MOSLEY, and LAKE COUNTY,**

      **Defendants.**

---

### REPORT AND RECOMMENDATION[1]

Upon referral, this cause comes before the Court on a motion to dismiss filed by Defendant Lake County (Doc. 8) and a motion to dismiss filed by Defendants Judge Cary F. Rada and Judge Dan R. Mosley (collectively, the "Judicial Defendants") (Doc. 20). Defendants seek dismissal of the complaint (Doc. 1) filed by *pro se* Plaintiff Don Karl Juravin with prejudice. (Doc. 8 at p. 4; Doc. 20 at p. 9). Plaintiff filed responses opposing each motion (Docs. 22 & 23). Upon consideration, I submit that Defendants' motions to dismiss be granted in part, as set forth below.

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(2); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

## I.  BACKGROUND

This action arises from several past and ongoing state court proceedings, where the Plaintiff has been, or is currently involved as a named party or otherwise, in the Fifth Judicial Circuit Court for Lake County, Florida. Plaintiff initiated this action by filing his complaint against Judge Rada and Judge Mosley—two state court judges serving in the Lake County Circuit Court, who, at various times, were assigned to Plaintiff's state court cases—and Lake County. (Doc. 1). Plaintiff filed a four-count complaint against Defendants, attempting to assert claims for (1) a violation of his due process rights under the Fourteenth Amendment (Count I); (2) a violation of his right to access the courts under the Florida Constitution (Count II); (3) abuse of process (Count III); and (4) a violation of his First Amendment right to the free exercise of religion (Count IV). (*Id.* at ¶¶ 33-42).

At the outset, the complaint is not a model of clarity as to the exact number and types of cases that the Judicial Defendants presided over in which the Plaintiff was involved as a named party or otherwise had an interest in. However, the complaint does make clear that Plaintiff's claims are based on actions or omissions of action taken by Defendants in various state court proceedings in the Lake County Circuit Court. The state court actions[2] referenced

---

[2] *See* cases in the Fifth Judicial Circuit Court for Lake County, Florida, *available* at https://courtrecords.lakecountyclerk.org/, by clicking "Case Search" at the top of the website page and then entering the case number into the "Case Number" field.

and alluded to in the complaint include 2022-CA-000889,[3] 2022-CA-000961,[4] 2021-CA-000227,[5] 2020-CA-001053,[6] and 2017-CA-000667.[7] (Doc. 1 at ¶¶ 17, 19, 23-25; *see* Doc. 20 at p. 7).[8] As best can be discerned from the complaint, and based on the state court dockets of these proceedings, Plaintiff's allegations appear to concern legal rulings made by the Judicial Defendants in a minimum of five cases, with at least three cases currently open (including one case reopened) and two closed cases.

---

[3] According to the state court docket, Mr. Juravin is not a named party in this action. *See* Case No. 2022-CA-000889, *available* at https://courtrecords.lakecountyclerk.org/. In this case, RG Developments and Investments LLC (plaintiff) sued Seaboard Development LLC (defendant) and Richard Arrighi (defendant). *See id.* This case is currently open. *See id.*

Mr. Juravin attached several documents from this case to the complaint, including an Agreed Order Approving Settlement and Dismissing Case with Prejudice with Retention of Jurisdiction for Enforcement Purposes signed by Judge Mosley on June 13, 2024 (Doc. 1 at pp. 18-19), a Joint Motion to Approve Settlement and for Entry of an Order of Dismissal with Prejudice and Retention of Jurisdiction for Enforcement filed by the parties on June 11, 2024 (*id.* at pp. 20-34), and a proposed Permanent Injunction filed by RG Developments and Investments LLC (*id.* at pp. 35-41).

[4] In this case, Mr. Juravin (plaintiff), Anna Juravin (plaintiff), Levia Juravin (minor plaintiff), and Ynes Juravin (minor plaintiff) sued Robert Mafes (defendant). *See* Case No. 2022-CA-000961, *available* at https://courtrecords.lakecountyclerk.org/. This case is currently open. *See id.*

[5] In this case, PSR Developers LLLP (plaintiff) sued Mr. Juravin (defendant), Anna Juravin (defendant), Bella Collina Property Owners Association Inc. (defendant), Club at Bella Collina LLC (defendant), and unknown tenants and any other persons or entities claiming by through under any of the defendants (defendant). *See* Case No. 2021-CA-000227, *available* at https://courtrecords.lakecountyclerk.org/. Mr. Juravin and Anna Juravin countersued PSR Developers LLLP. *See id.* This case is currently closed. *See id.*

[6] In this case, Mr. Juravin (plaintiff) sued Bryan Orr (defendant), Kalos Services Inc. (defendant), John Doe I (defendant), and John Doe II (defendant). *See* Case No. 2020-CA-001053, *available* at https://courtrecords.lakecountyclerk.org/. This case is currently closed. *See id.*

[7] In this case, DCS Real Estate Investments LLC (plaintiff), Club at Bella Collina LLC (plaintiff), Randall Greene (plaintiff), and Paul Simonson (plaintiff) sued Mr. Juravin (defendant) and Anna Juravin (defendant). *See* Case No. 2017-CA-000667, *available* at https://courtrecords.lakecountyclerk.org/. This reopened case is an active civil case. *See id.*

[8] The undersigned finds it appropriate to take judicial notice of the dockets in these state court proceedings, as the state court records are integral to this case and referred to throughout the complaint. *See Griffin v. Verizon Commc'ns Inc.*, 746 F. App'x 873, 876 (11th Cir. 2018) ("Ordinarily, at the motion to dismiss stage, the court limits its consideration to the pleadings and exhibits attached thereto. . . . However, a district court may consider an extrinsic document even on Rule 12(b)(6) review if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. . . . Similarly, a district court may consider judicially noticed documents. . . . Courts typically take judicial notice of record documents from other judicial proceedings.") (internal quotation marks and citations omitted).

In short, Plaintiff asserts that "a pattern of judicial bias, procedural misconduct, and systemic failures in Lake County's judiciary have deprived him of fundamental constitutional rights." (Doc. 1 at p. 1). He claims that Defendants "engaged in actions that violated due process, disregarded legal precedent, and exhibited unethical judicial behavior" throughout the underlying state court proceedings, causing him "severe financial, emotional, and reputational harm." (*Id.* at pp. 1-2).

As to the Judicial Defendants, Plaintiff claims that they exhibited bias against him, ignored legal precedent, and engaged in misconduct while presiding over several state court proceedings in the Lake County Circuit Court in which he was involved. (*Id.* at ¶¶ 2-3). Plaintiff asserts that in numerous instances, Judge Rada demonstrated bias and committed misconduct by consistently favoring Dwight Schar, a "powerful" real estate developer, and his associates, including PSR Developers LLLP, resulting in decisions that violated Plaintiff's constitutional rights. (*Id.* at ¶¶ 1-2, 7). The litany of these decisions included, *inter alia*, allowing opposing counsel to make edits to a summary judgment order without a hearing; entering summary judgment in favor of PSR Developers LLLP despite the existence of Plaintiff's pending counterclaims and without notice to Plaintiff; ruling on Plaintiff's counterclaims after entering summary judgment without jurisdiction; striking Plaintiff's demand for a jury trial; approving the foreclosure sale of Plaintiff's home "at a price significantly below its market value, with Schar's associates being the only bidder at the sale"; and allowing unmonitored inspections of Plaintiff's home. (*Id.* at ¶¶ 8-11, 15, 38, 42).[9]

---

[9] Based on the state court dockets, Judge Rada presided over one case involving Mr. Juravin in 2021-CA-000227 (case closed). *See* Case No. 2021-CA-000227, *available* at https://courtrecords.lakecountyclerk.org/. Although Plaintiff does not explicitly cite this case number in the complaint, based on his factual allegations asserted therein, it appears that Plaintiff is referring to 2021-CA-000227 that Judge Rada presided over. (*See* Doc. 1 at ¶¶ 7-16, 35, 38; Doc. 20 at p. 7).

Similarly, with Judge Mosley, Plaintiff contends that there are rulings in various state court proceedings that demonstrate Judge Mosley's bias, disregard for legal precedent, and misconduct, particularly in cases involving Dwight Schar and his associates. (Doc. 1 at ¶ 3). Such rulings he cites to included, *inter alia*, dismissing two cases with prejudice despite Plaintiff making significant amendments to his complaints; denying Plaintiff's request to disqualify or recuse Judge Mosley from a case due to his alleged connections with Dwight Schar; denying Plaintiff's request for a stay in a case when Plaintiff's insurer became insolvent, causing Plaintiff to file a Writ of Prohibition with the Florida Supreme Court; denying Plaintiff's request to file a permissive counterclaim; issuing two purportedly conflicting contempt orders against Plaintiff, with one order imposing a prison sentence; denying Plaintiff's request to dissolve or modify an injunction; and approving a settlement. (*Id.* at ¶¶ 17-21, 23, 25; *see id.* at pp. 18-73).[10]

As to Defendant Lake County, Plaintiff alleges, in a wholly conclusory manner, that it demonstrated systemic failures in judicial oversight by failing to adequately address judicial misconduct in Lake County, allowing conflicting orders to be entered, and permitting

---

[10] Based on the state court dockets, Judge Mosley presided over several cases involving Mr. Juravin, including 2022-CA-000889 (case open), 2022-CA-000961 (case open), 2020-CA-001053 (case closed), and 2017-CA-000667 (case reopened). *See* Case No. 2022-CA-000889, 2022-CA-000961, 2020-CA-001053, and 2017-CA-000667, *available* at https://courtrecords.lakecountyclerk.org/.

Plaintiff states that in 2022-CA-000889, Judge Mosley "approved a settlement allowing destruction of documents and potential evidence in order to protect billionaire Schar and his interests. This was done knowingly. This evidence was vital to Juravin's case. Judge Mosley presides over both cases and hides the truth to protect Schar's financial interests." (Doc. 1 at ¶ 25). As to 2022-CA-000961 and 2020-CA-001053, Plaintiff asserts that Judge Mosley "similarly demonstrated bias against Plaintiff by ignoring a Motion for addition to obtain counsel and dismissing his cases . . . with prejudice, despite Plaintiff having made significant amendments to his complaints." (*Id.* at ¶ 17). In 2017-CA-000667, Plaintiff contends that Judge Mosley "refused to stay the instant litigation" when Plaintiff's insurer, who was funding his defense for seven years in that litigation, became insolvent; Judge Mosley denied Plaintiff's request to dissolve or modify an injunction that has been in place since 2018; and Judge Mosley denied Plaintiff's motion to overrule deposition objections, compel answers, and to show cause for failing to comply with a court order. (*Id.* at ¶¶ 19, 23-24).

procedural irregularities to occur in cases involving the Plaintiff without investigation or correction. (Doc. 1 at ¶¶ 4, 30, 32). Plaintiff further alleges that "both the Lake County Court System and Lake County Sheriff's Office failed to properly manage and investigate these issues[.]" (*Id.* at ¶ 31).

He seeks various forms of relief, including declaratory relief, compensatory damages, punitive damages, and attorney's fees and costs. (*Id.* at p. 15). In particular, he requests that the Court (1) "[e]nter a declaratory judgment that the actions of [Defendants] violated Plaintiff's constitutional rights to due process, access to the courts, and freedom of religion"; (2) "[a]ward compensatory damages for the substantial financial, emotional, and reputational harm suffered by Plaintiff as a result of Defendants' actions, including the loss of Plaintiff's home, displacement of his family, and the undervaluation of his property in the foreclosure sale"; (3) "[a]ward punitive damages in the amount of $60 million, to punish Defendants for their egregious action and deter future misconduct, as Defendants' actions were done with malice, bias, and reckless disregard for Plaintiff's rights"; and (4) "[a]ward attorneys' fees and costs incurred in bringing this action[.]" (*Id.*).[11]

---

[11] The Court notes that although Plaintiff does not request injunctive relief in the complaint, Plaintiff filed a motion for preliminary injunctive relief on January 23, 2025, three months after filing the complaint. (Doc. 26). In that motion, Plaintiff requested that the Court "enjoin[] Judge Dan R. Mosley from presiding over Plaintiff's state court cases and stay[] enforcement of orders threatening Plaintiff's liberty." (*Id.* at p. 1). In support of the motion, Plaintiff filed a notice of filing exhibits, providing exhibits concerning a civil action before Judge Mosley in Case No. 2017-CA-000667 (*see generally* Docs. 27, 27-1), and pointed to specific examples of rulings that Judge Mosley made in that case, which Plaintiff alleged, demonstrated Judge Mosley's bias and misconduct (Doc. 26 at pp. 2-3; Doc. 27 at pp. 2-3). These rulings by Judge Mosley included, *inter alia*, denial of Plaintiff's motion to disqualify or recuse Judge Mosley from the case; denial of a request for a stay in the case when Plaintiff's insurer became insolvent; denial of Plaintiff's request to file a permissive counterclaim; issuance of two purportedly conflicting contempt orders against Plaintiff, with imposed jail sentences; and denial of Plaintiff's request to dissolve or modify an injunction. (Doc. 27 at pp. 2-3). The Court denied Plaintiff's motion for preliminary injunctive relief on January 30, 2025 ("Preliminary Injunction Order"). (Doc. 33). The Court determined that "Plaintiff fail[ed] to establish his entitlement to the extraordinary and drastic remedy of a preliminary injunction" because "[a]t a minimum, Plaintiff fail[ed] to clearly establish the burden of persuasion as to the first

Defendants seek to dismiss Plaintiff's complaint with prejudice. (Doc. 8 at p. 4; Doc. 20 at p. 9). The Judicial Defendants move to dismiss based on judicial immunity and lack of subject matter jurisdiction under the *Rooker-Feldman*[12] and *Younger*[13] abstention doctrines. (Doc. 20 at pp. 1, 9). Defendant Lake County moves to dismiss the complaint as a shotgun pleading, for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, and failure to state a claim. (Doc. 8 at pp. 1-4).[14] Plaintiff responded in opposition to each motion to dismiss and seeks an opportunity to amend the complaint to address any deficiencies identified by the Court. (Doc. 22 at p. 5; Doc. 23 at p. 6).

## II.    LEGAL STANDARDS

Federal Rules of Civil Procedure 8 and 10 lay out the minimum federal pleading requirements. Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Under Rule 10, "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b).

---

prerequisite for obtaining such [injunctive] relief, which require[d] him to show [that] he ha[d] a substantial likelihood of success on the merits of the underlying case." (*Id.* at p. 6) (internal quotation marks and citations omitted).

[12] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923), and *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

[13] *See Younger v. Harris*, 401 U.S. 37 (1971).

[14] The Court notes that because Plaintiff served the Lake County Clerk of Court and Comptroller with a copy of the complaint (*see* Doc. 3 at p. 1), Gary J. Cooney—as Lake County Clerk of the Circuit Court and Comptroller ("Clerk")—filed Lake County's motion to dismiss (Doc. 8). In opposition to Defendant Lake County's motion to dismiss, Plaintiff argues that his claims "focus on the Clerk's administrative duties," including: (1) "[m]ishandling court records, contributing to procedural errors"; and (2) "[f]ailing to address known irregularities, enabling judicial misconduct." (Doc. 23 at p. 5). Notably, however, the Clerk is not a named party in this action. Plaintiff does not explicitly state in the complaint which individual, entity, or office in Lake County he seeks to name as a defendant.

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content, allowing the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *See id.* (citing *Twombly*, 550 U.S. at 556). While this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See id.* (quoting *Twombly*, 550 U.S. at 555). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests" and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555 (citations omitted). Although a court must accept as true well-pleaded allegations, it is not bound to accept a legal conclusion stated as a "factual allegation" in the complaint. *See id.*; *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations omitted).

Generally, in considering a Rule 12(b)(6) motion to dismiss, a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *See LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted); *see also U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). Exhibits attached to the complaint are "part of the pleading

for all purposes." *See* Fed. R. Civ. P. 10(c); *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("[D]ocuments attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6).") (citation omitted). A district court may take judicial notice of public records, such as court filings and other official records, without converting a motion to dismiss into a motion for summary judgment. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (per curiam); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278-80 (11th Cir. 1999). Additionally, "[a] court may take judicial notice of its own records and the records of inferior courts." *See United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) (citation omitted).

Moreover, under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a case for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Such motions challenging subject matter jurisdiction are presented either as a "facial attack" or a "factual attack" to the complaint. *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997); *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack necessitates accepting the plaintiff's allegations in the complaint as true and requiring a court to decide whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction. *See Garcia*, 104 F.3d at 1261; *McElmurray*, 501 F.3d at 1251. A factual attack challenges the existence of jurisdiction and allows a court to consider matters outside the pleadings, such as testimony and affidavits, to determine whether subject matter jurisdiction exists "irrespective of the pleadings." *See Garcia*, 104 F.3d at 1261; *McElmurray*, 501 F.3d at 1251. When a court considers a motion to dismiss on jurisdictional grounds, it may consider matters "beyond the pleadings in order to determine whether it

lacked subject matter jurisdiction." *See Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001).

Because Plaintiff is proceeding *pro se*, his pleadings are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam) (citation omitted); *see also Gilmore v. Hodges*, 738 F.3d 266, 281 (11th Cir. 2013) ("But liberal construction is not the same thing as wholesale redrafting."). While the Court holds complaints in *pro se* actions to less stringent pleading standards, a *pro se* plaintiff remains subject to the same law and rules of the Court, including the Federal Rules of Civil Procedure and the Local Rules for the Middle District of Florida, as a litigant represented by counsel. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989); *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). As a result, "the leniency accorded *pro se* litigants does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading to sustain an action." *See Matthews, Wilson & Matthews, Inc. v. Cap. City Bank*, 614 F. App'x 969, 970 n.1 (11th Cir. 2015) (per curiam) (citation omitted).

## III.  DISCUSSION

Collectively, Defendants move for dismissal of Plaintiff's complaint on various grounds, including judicial immunity, shotgun pleading, lack of subject matter jurisdiction under the *Rooker-Feldman* and *Younger* abstention doctrines, and failure to state a claim. (Doc. 8 at pp. 2-4; Doc. 20 at pp. 1, 9). The undersigned agrees that Plaintiff's claims against the Judicial Defendants are barred by the doctrine of judicial immunity and that Plaintiff's complaint constitutes an impermissible shotgun pleading. To that end, I will first address and

explain why the Judicial Defendants are entitled to judicial immunity and then why Plaintiff's complaint constitutes an impermissible shotgun pleading. I will then address amendment.

### A. Judicial Immunity

The Judicial Defendants argue that Plaintiff's claims against them in their official judicial capacities are barred by the doctrine of judicial immunity. (Doc. 20 at pp. 4-6). "[A] district court may dismiss a claim based on absolute judicial immunity if it represents an 'obvious bar' based on the allegations in the complaint." *Williams v. Alabama*, 425 F. App'x 824, 825 (11th Cir. 2011) (quoting *Sibley v. Lando*, 437 F.3d 1067, 1070 n.2 (11th Cir. 2005) (per curiam)). "Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (internal quotation marks omitted); *see Smith v. Shook*, 237 F.3d 1322, 1325 (11th Cir. 2001) (stating that judicial immunity applies to claims for damages with a "judge who dealt with the plaintiff in a judicial capacity and did not act in the 'clear absence of all jurisdiction.'") (quoting *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986)); *see also Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). Judicial immunity also generally extends to demands for injunctive and declaratory relief. *See Bolin*, 225 F.3d at 1242; *Sibley v. Lando*, 437 F.3d at 1073-74.

Importantly, "[l]ike other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *See Mireles v. Waco*, 502 U.S. 9, 11 (1991). As such, judicial immunity is absolute—it "applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *See Bolin*, 225 F.3d at 1239 (citing *Stump*, 435 U.S. at 356); *McCullough v. Finley*, 907 F.3d 1324, 1331 (11th Cir. 2018) (explaining that judicial immunity extends to *all* "judicial acts regardless of whether

[the judge] made a mistake, acted maliciously [or corruptly], or exceeded his authority") (emphasis added). "[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Hyland v. Kolhage*, 267 F. App'x 836, 839-40 (11th Cir. 2008) (quoting *Mireles*, 502 U.S. at 11). Thus, "[t]his immunity applies when the judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *See Pierson v. Ray*, 386 U.S. 547, 554 (1967) (internal quotation marks omitted).

It has been well-established that the doctrine of judicial immunity applies to state court judges. *See Stevens v. Osuna*, 877 F.3d 1293, 1302 (11th Cir. 2017) ("[A]bsolute immunity has been extended to state court judges. . . .") (citing *Pierson*, 386 U.S. at 547); *see also Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985) ("Absolute immunity flows not from rank or title or location within the Government, . . . but from the nature of the responsibilities of the individual official.") (internal citation and quotation marks omitted). As the Eleventh Circuit has explained, whether a judge's actions were made while acting in his judicial capacity, and within the bounds of his jurisdiction, depends on whether "(1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *See Sibley*, 437 F.3d at 1070. Courts do not review whether the judicial act was appropriate, but rather whether the act was, in fact, a judicial activity. *See id*. at 1071; *Stevens*, 877 F.3d at 1305 (stating that when assessing whether an act is one normally performed by a judge, "we look only to

the nature and function of the act, not the act itself") (internal quotation marks omitted). As to any state law claims against state court judges, "Florida courts have adopted a doctrine of absolute judicial immunity and have equated it to the federal doctrine." *See Sibley*, 437 F.3d at 1072.

As noted in the Court's January 30, 2025 Preliminary Injunction Order (Doc. 33 at p. 7), Plaintiff's complaint is premised entirely on his desire to challenge the doctrine of judicial immunity as legal precedent and expressly "acknowledges" that there is "broad immunity" for judicial acts "under current legal doctrine" (*see* Doc. 1 at p. 2). Plaintiff, therefore, appears to acknowledge that his claims against the Judicial Defendants are barred by the doctrine of judicial immunity.

Indeed, Plaintiff's allegations of bias and misconduct against the Judicial Defendants relate to actions that fall within their judicial role, and each act taken by the Judicial Defendants constitutes a normal judicial function in cases pending before them. Such actions include unfavorable rulings, favoring opposing counsel, dismissing cases, approving a foreclosure sale, ruling on motions, not ruling on motions, *ex parte* communications, holding hearings, not holding hearings, and allowing testimony in a hearing. (Doc. 1 at ¶¶ 9-11, 15-25, 27-28; Doc. 22 at p. 2); *see, e.g.*, *Wilson v. Bush*, 196 F. App'x 796, 799 (11th Cir. 2006) (finding that "[e]ntering a judgment or order is a quintessential judicial function and immunity attaches to it"); *Cmty. Bank of Homestead v. Torcise*, 162 F.3d 1084, 1087 (11th Cir. 1998) (recognizing that Florida State circuit courts have jurisdiction over foreclosure proceedings); *Rolleston v. Eldridge*, 848 F.2d 163, 164-65 (11th Cir. 1988) (determining that dismissing counterclaims without a hearing constitute a judicial act); *Dykes v. Hosemann*, 776 F.2d 942, 946 (11th Cir. 1985) (en banc) (determining that *ex parte* communications to

opposing counsel constitute a judicial act, even if allegedly conspiratorial); *Fake v. City of Phila.*, 704 F. App'x 214, 217 (11th Cir. 2017) (stating that "judicial immunity [would not] be lost even if some of the defendants, as [plaintiff] suggests, engaged in improper favoritism or ex parte communications").

Plaintiff has not alleged sufficient facts showing that the Judicial Defendants' actions during the course of the underlying state court cases were taken in the clear absence of all jurisdiction with respect to any orders entered, hearings held, or otherwise. *Cf. Wilson*, 196 F. App'x at 799 ("Wilson's claims are based on allegations that the judges acted corruptly and conspired with Bush and not that they acted in the absence of all jurisdiction. The district court properly found that judicial immunity shields them from suit."). As this Court previously explained, the "Judicial Defendants' challenged actions look to have been part of the normal judicial process," and the allegations in the complaint "do[ ] not clearly support that the Judicial Defendants acted without jurisdiction." (*See* Doc. 33 at p. 8). Thus, to the extent Plaintiff's claims are asserted against the Judicial Defendants and seek monetary damages, such claims are barred by the doctrine of judicial immunity.

In addition to monetary damages, Plaintiff seeks declaratory relief against the Judicial Defendants. (Doc. 1 at p. 15). In response to the Judicial Defendants' motion to dismiss, Plaintiff asserts that he is seeking prospective relief and cites *Pulliam v. Allen*, 466 U.S. 522 (1984) for the proposition that "[j]udicial immunity does not protect judges from prospective relief." (*See* Doc. 22 at pp. 4-5). While judicial immunity does not protect a state judge from claims for injunctive and declaratory relief, the Supreme Court in *Pulliam* held that judicial immunity was not a bar to demands for prospective injunctive relief against state court judges. *See Pulliam*, 466 U.S. at 541-42. But that is no longer the current state of the law. Congress

abrogated *Pulliam* "in 1996 [when it] enacted the Federal Courts Improvement Act . . ., in which it amended § 1983 to provide that injunctive relief shall not be granted in an action brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." *See Bolin*, 225 F.3d at 1242 (internal quotation marks omitted). In any event, Plaintiff did not request injunctive relief in his complaint,[15] but rather he seeks declaratory relief against the Judicial Defendants, asking the Court to "[e]nter a declaratory judgment" declaring the alleged past actions of the Judicial Defendants as "violat[ing] Plaintiff's constitutional rights to due process, access to the courts, and freedom of religion." (*See* Doc. 1 at p. 15). Despite Plaintiff's assertions in his opposition that he is seeking prospective relief, the declaratory relief he requests in the complaint is retrospective in nature. *See McCone v. Thorpe*, No. 6:19-cv-883-ORL-41GJK, 2020 WL 1444032, at *2 (M.D. Fla. Mar. 25, 2020), *aff'd*, 828 F. App'x 697 (11th Cir. 2020) (explaining the applicability of judicial immunity to requests for declaratory relief and recognizing a distinction between retrospective relief, which seeks a remedy for alleged past injury, and prospective relief, which seeks a remedy for alleged potential future injury).

Nevertheless, for declaratory relief to be available, a plaintiff "must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *See Sibley*, 437 F.3d at 1073 (quoting *Bolin*, 225 F.3d at 1242). Here, the complaint is devoid of any allegations that there was an

---

[15] As noted above, Plaintiff had previously requested injunctive relief in this case by filing a motion for preliminary injunctive relief on January 23, 2025, asking the Court to "enjoin[] Judge Dan R. Mosley from presiding over Plaintiff's state court cases and stay[] enforcement of orders threatening Plaintiff's liberty." (Doc. 26 at p. 1). The Court denied Plaintiff's request for injunctive relief on January 30, 2025. (Doc. 33).

inadequate remedy at law through the state appeals process. *See id*. at 1074 (indicating that the state appellate process is an adequate remedy at law); *see also Bolin*, 225 F.3d at 1243 (noting that in addition to appeals, a plaintiff may seek an extraordinary writ, such as a writ of mandamus). Because Plaintiff has not established that he was unable to avail himself of the state appellate process to challenge any of his state court rulings, declaratory relief is unavailable. *See Daker v. Adams*, No. 21-11068, 2023 WL 3607218, at *3 (11th Cir. May 24, 2023) (per curiam); *Bolin*, 225 F.3d at 1242; *Sibley*, 437 F.3d at 1074. "Simply put, if Plaintiff is unhappy with decisions made by the judge[s] in his cases, his remedy is to file an appeal, not to sue the judges." *See Juravin v. Judge Lori V. Vaughan, et al.*, No. 8:25-cv-485-TPB-TGW, at doc. 3, p. 4 (M.D. Fla. Mar. 7, 2025); *Stevens*, 877 F.3d at 1301 ("A judge's 'errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption[,] . . . [which] would contribute not to principled and fearless decision-making but to intimidation.") (quoting *Pierson*, 386 U.S. at 554). Therefore, to the extent Plaintiff's claims are asserted against the Judicial Defendants and seek declaratory relief, such claims are barred by the doctrine of judicial immunity.

### B. Shotgun Pleading

In addition to its deficiencies as to the Judicial Defendants, the complaint as a whole is an impermissible shotgun pleading. "A complaint that fails to comply with Rules 8 and 10 may be classified as a shotgun pleading." *Luft v. Citigroup Global Markets Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015) (internal quotation marks omitted); *see Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (defining a "shotgun pleading" as a pleading that "violate[s] either Rule 8(a)(2) or Rule 10(b), or both"). The purpose of Rules 8(a)(2) and 10(b) is "to require the pleader to present his claims discretely and succinctly, so

that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted," and then "at trial, the court can determine that evidence which is relevant and that which is not." *See Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (citation omitted); *see also Weiland*, 792 F.3d at 1320.

There are four basic categories of shotgun pleadings: (1) a complaint "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that fails to separate "each cause of action or claim for relief" into a different count; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *See Weiland*, 792 F.3d at 1321-23. Each of these types of pleadings fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *See id.* at 1323.

In this instance, Plaintiff's complaint falls under the first, second, and fourth categories of shotgun pleadings. First, each count in the complaint incorporates by reference the allegations of all preceding paragraphs, causing each successive count to carry the allegations from the other counts that came before it, and the final count is a combination of the entire complaint. (Doc. 1 at ¶¶ 33, 36, 39, 41); *see Weiland*, 792 F.3d at 1321 n.11 (collecting cases); *Smith v. Knipe*, No. 6:23-CV-1718-WWB-LHP, 2024 WL 988853, at *3 (M.D. Fla. Feb. 13, 2024), *report and recommendation adopted*, No. 6:23-CV-1718-JSS-LHP, 2024 WL 1619412

(M.D. Fla. Apr. 15, 2024) (finding the complaint to be the first type of shotgun pleading, where the "first four counts of Plaintiff's complaint incorporate[d] all of the preceding allegations from the [c]omplaint, without specifying which allegations relate to which claim"). Specifically, Counts II, III, and IV incorporate all the foregoing allegations, including the previous counts. (Doc. 1 at ¶¶ 36, 39, 41). As a result, "most of the counts . . . contain irrelevant factual allegations and legal conclusions." *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). Consequently, in ruling on the sufficiency of a claim, the Court is faced with the onerous task of "sift[ing] out the irrelevancies" to determine which facts are relevant to each claim. *See id.* Because Plaintiff's complaint fails to clearly state which allegations relate to which claim, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

Second, Plaintiff's complaint "is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *See Weiland*, 792 F.3d at 1322. For example, the complaint opines about corruption in the real estate industry (Doc. 1 at pp. 2-3, ¶ 3), the demographic makeup of judges in Lake County (*id.* at pp. 2-3), and general systematic failures in the Lake County's Sheriff's Office (*id.* at ¶ 31) who is not a party to this action. Plaintiff fails to explain how these allegations relate to the specific claims for relief. Because the complaint includes immaterial facts wholly irrelevant to the action, it requires "the district court . . . to sift through the facts presented and decide for [itself] which [are] material to the particular cause of action asserted, a difficult and laborious task indeed." *See Pelletier v. Sweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991). The Court should not undertake such a task.

Third, Plaintiff's complaint mixes Counts II and IV against multiple defendants without explaining which of the defendants is responsible for which acts or omissions. *See Weiland*, 792 F.3d at 1323. For example, Count II of the complaint alleges that "Defendants' actions, through improper judicial conduct and biased rulings, violated Plaintiff's right to access the courts as guaranteed under Article I, Section 21 of the Florida Constitution." (Doc. 1 at ¶ 37). Although Count II specifically identifies and names Judge Rada, Plaintiff does not attempt to explain how *each* Defendant specifically violated Plaintiff's right to access the courts under the Florida Constitution. (*See id.* at ¶ 38) (emphasis added). Next, Count IV of the complaint asserts that "Defendants, particularly Judge Rada, violated Plaintiff's First Amendment right to the free exercise of religion by allowing unmonitored inspections of Plaintiff's home[,]" which "housed religious artifacts and was the headquarters for nonprofit religious organizations, including a ministry." (*Id.* at ¶ 42). Again, though Count IV attempts to explain how Judge Rada specifically violated Plaintiff's constitutional rights under the First Amendment, it does not explain how *each* of the other Defendants violated that constitutional right. (*See id.*) (emphasis added). By lumping the actions of "Defendants" together in Counts II and IV, Plaintiff's complaint makes it virtually impossible for the undersigned to discern what role, if any, each of the Defendants played in the alleged violations. *See Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996) (determining that the complaint's pleading deficiency makes it "virtually impossible to ascertain . . . which defendant committed which alleged act" for defendants to defend the claims against them).

In sum, Plaintiff's complaint is an impermissible shotgun pleading that fails to give the Defendants adequate notice of the claims asserted against them and the grounds upon which each claim rests. *See Weiland*, 792 F.3d at 1323. The Eleventh Circuit has explained that

shotgun pleadings of this sort are "altogether unacceptable." *See Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018) (referring to shotgun pleadings as "garbage" and urging courts to address these defects to prevent issues later in litigation); *Cook v. Randolph Cnty., Ga.*, 573 F.3d 1143, 1151 (11th Cir. 2009) ("We have had much to say about shotgun pleadings, none of which is favorable.") (collecting cases); *see also Weiland*, 792 F.3d at 1321 n.9 (stating that the Eleventh Circuit has engaged in a "thirty-year salvo of criticism aimed at shotgun pleadings, and there is no ceasefire in sight"). Further, shotgun pleadings require the district court to sift through allegations to separate the meritorious claims from the unmeritorious, resulting in a "massive waste of judicial and private resources." *See PVC Windows, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010) (citation omitted). All told, "[s]hotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court[,] and the court's parajudicial personnel and resources." *See Cramer*, 117 F.3d at 1263; *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (stating that courts "have little tolerance for shotgun pleadings. . . . [because] [t]hey waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts") (internal quotation marks and citations omitted); *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001) ("[S]hotgun pleadings wreak havoc on the judicial system.").

While Defendants raise several other arguments in favor of dismissal—including issues regarding lack of subject matter jurisdiction under the *Rooker-Feldman* and *Younger*

abstention doctrines, and failure to state a claim [16]—dismissal on these grounds is not warranted at this time, given the shotgun nature of the complaint, and because such arguments will be more appropriately addressed upon the filing of a complaint (if the Plaintiff files one) that complies with the Federal Rules of Civil Procedure. *See, e.g.*, *Griffin v. Calderon*, No. 6:24-cv-1432-PGB-LHP, 2024 WL 5378959, at *4-6 (M.D. Fla. Dec. 23, 2024), *report and recommendation adopted*, No. 6:24-cv-1432-PGB-LHP, 2025 WL 350401 (M.D. Fla. Jan. 31, 2025) (declining to address defendants' arguments on the merits in favor of dismissal, including the *Rooker-Feldman* and *Younger* abstention doctrines and failure to state a claim, given the shotgun nature of the complaint); *Knipe*, 2024 WL 988853, at *4 (declining to address defendants' argument in favor of dismissal for failure to state a claim, given that the complaint was a shotgun pleading); *Ally v. Hous. Auth. of City of Orlando, Fla.*, No. 6:20-cv-1518-WWB-LRH, 2021 WL 2446760, at *4 n.5 (M.D. Fla. Apr. 8, 2021), *report and recommendation adopted*, No. 6:20-cv-1518-WWB-LRH, 2021 WL 2446712 (M.D. Fla. May 4, 2021) (finding Rule 12(b)(6) arguments premature and declining to address them when the shotgun complaint was due to be repleaded) (citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)); *Magluta*, 256 F.3d at 1284 (refusing to "decide whether some of [plaintiff's] claims were subject to dismissal under Rule 12(b)(6), leaving for another day a decision about other claims following repleader on remand," because such "[p]iecemeal adjudication . . . does not promote judicial efficiency"); *Alvarez v. Lakeland Area Mass Transit Dist.*, No. 8:19-cv-1044-T-33SPF, 2019 WL 2868943, at *3 (M.D. Fla. July 3, 2019) ("Because the [Amended] Complaint is a shotgun complaint, repleader is necessary and the Court need not delve into

---

[16] Defendant Lake County specifically asserts that Plaintiff's complaint should be dismissed on the grounds of failure to state a claim. (*See* Doc. 8 at pp. 3-4).

the merits of the claims at this juncture.") (quoting *Madak v. Nocco*, No. 8:18-cv-2665-T-33AEP, 2018 WL 6472337, at *3 (M.D. Fla. Dec. 10, 2018)); *Shaffer v. Bank of N.Y. Mellon & Shellpoint LLC*, No. 8:17-cv-565-T-33AAS, 2017 WL 1653789, at *1 (M.D. Fla. May 2, 2017) ("As the Court has determined that repleader is necessary, the Court declines to address [d]efendants' argument that all counts fail to state claims upon which relief can be granted."); *Bardelas v. City of Doral, Fla.*, No. 1:20-CV-24894-KKM, 2021 WL 2531074, at *4 (S.D. Fla. Apr. 15, 2021) ("[B]ecause the Court is already dismissing the [c]omplaint as an impermissible shotgun pleading with leave to amend, the Court sees no reason to delve into the merits of the 12(b)(6) arguments before the Court has a comprehensible and procedurally proper complaint before it.").

### C.  Leave to Amend

Defendants argue that Plaintiff's complaint should be dismissed with prejudice because his claims are barred by judicial immunity and for lack of subject matter jurisdiction under the *Rooker-Feldman* and *Younger* abstention doctrines. (Doc. 8 at pp. 3-4; Doc. 20 at pp. 4-9).[17] Ordinarily, "[w]here a more carefully drafted complaint might state a claim, a [*pro se*] plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *See Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (citation omitted); *Carter v. HSBC Mortg. Servs., Inc.*, 622 F. App'x 783, 786 (11th Cir. 2015); *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019) (explaining that a *pro se* plaintiff generally must be given at least one opportunity to amend

---

[17] The Judicial Defendants request that the complaint be dismissed with prejudice based on judicial immunity and for lack of subject matter jurisdiction under the *Rooker-Feldman* and *Younger* abstention doctrines. (Doc. 20 at pp. 1, 9). Defendant Lake County requests that the complaint be dismissed with prejudice, namely, for lack of subject matter jurisdiction under the *Rooker-Feldman* abstention doctrine. (Doc. 8 at pp. 3-4).

his complaint before his case is dismissed with prejudice); *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1206 (11th Cir. 2003) ("[D]istrict courts are required to give plaintiffs at least one opportunity to amend a complaint before the district court dismisses an action with prejudice.") (citation omitted); *see also Lacy v. B.P P.L.C.*, 723 F. App'x 713, 717 (11th Cir. 2018) (noting that "it is usually an abuse of discretion for a district court to dismiss a *pro se* complaint without granting leave to amend").

In particular, when a court dismisses a complaint on shotgun pleading grounds, it "must give the litigant one chance to replead, with instructions on the deficiencies." *See Armstrong v. U.S. Att'y Gen.*, No. 23-10323, 2024 WL 1554758, at *2 (11th Cir. Apr. 10, 2024) (citing *Vibe Micro, Inc.*, 878 F.3d at 1296); *Jackson*, 898 F.3d at 1358 ("In dismissing a shotgun complaint for noncompliance with Rule 8(a), a district court must give the plaintiff one chance to remedy such deficiencies.") (citation and internal quotation marks omitted); *see, e.g.*, *Knipe*, 2024 WL 988853, at *4-5 (dismissing *pro se* plaintiff's complaint without prejudice as a shotgun pleading and allowing plaintiff with leave to amend the complaint); *Calderon*, 2024 WL 5378959, at *4-6, 11 (dismissing *pro se* plaintiff's complaint without prejudice as a shotgun pleading and allowing plaintiff with a limited opportunity to replead). Furthermore, "we have also advised that when a defendant fails to [move for a more definite statement], the district court ought to take the initiative to dismiss or strike the shotgun pleading and give the pleading an opportunity to replead." *See Weiland*, 792 F.3d at 1321 n.10 (citation omitted).

Although leave to amend is generally freely given, a district court may deny a *pro se* plaintiff leave to amend where the amendment would be futile. *See Sifford v. Ford*, 701 F. App'x 794, 796 (11th Cir. 2017) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)); *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004). Amendment is futile, where

"the amended complaint would not survive a motion to dismiss." *See Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011) (citation omitted). The Eleventh Circuit, however, has adopted the principle that "a pro se litigant generally must be given at least one opportunity to amend his complaint." *See Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014); *see also Carter*, 622 F. App'x at 788 (explaining that courts "err on the side of generosity to the [*pro se*] plaintiff" where the issue of futility is close).

Here, while Defendants' arguments for dismissing the complaint with prejudice based on the *Rooker-Feldman* and *Younger* abstention doctrines may have merit, the undersigned cannot state for certain whether Plaintiff's claims should be barred entirely under either of those legal doctrines, given the shotgun nature of the complaint and the present allegations asserted therein. Further, with respect to the Judicial Defendants' argument that any amendment would be futile because they are entitled to judicial immunity, courts have dismissed a *pro se* plaintiff's initial complaint without prejudice and allowed leave to amend when their claims asserted against a judge are barred by judicial immunity and the complaint constitutes an impermissible shotgun pleading or fails to comply with the requirements of the Federal Rules of Civil Procedure. *See, e.g.*, *Doe v. Connecticut Gen. Life Ins. Co.*, No. 8:20-cv-1454-KKM-TGW, 2021 WL 3371286, at *2 (M.D. Fla. Aug. 3, 2021) (dismissing *pro se* plaintiff's complaint without prejudice, in part, as a shotgun pleading and allowing plaintiff with leave to amend, even though a judge was entitled to absolute judicial immunity from plaintiff's claims); *Osborne v. Florida*, No. 6:19-cv-478-ORL-WWB-DCI, 2019 WL 11690191, at *2-4 (M.D. Fla. Oct. 10, 2019) (recommending dismissing *pro se* plaintiff's complaint without prejudice, in part, for failure to comply with the Federal Rules of Civil Procedure and

allowing plaintiff with leave to amend, even though plaintiff's claims against a judge were barred by judicial immunity).

Therefore, in light of Plaintiff's *pro se* status and his request to amend the complaint, and because this would be the first dismissal of the complaint on shotgun pleading grounds, the undersigned submits that dismissal of the complaint with an opportunity to replead is appropriate at this time. *See Woldeab*, 885 F.3d at 1291-92 (holding that a district court abused its discretion by dismissing a *pro se* plaintiff's case with prejudice because the plaintiff never clearly indicated that he did not want to amend the complaint and because a more carefully crafted complaint with more specific allegations against the proper defendant might have been able to state a claim).

### D. Repleader

To the extent Plaintiff decides to replead—i.e., file an amended complaint—he should be mindful of the immunity afforded to judicial officers, the pleading requirements discussed above, and the *Rooker-Feldman* and *Younger* abstention doctrines, as raised by Defendants.[18]

### 1. *Rooker-Feldman* Doctrine

In the complaint, Plaintiff references two state court proceedings, including 2020-CA-001053 and 2021-CA-000227, that concluded prior to this current proceeding in federal court. (Doc. 1 at ¶¶ 7-17, 35, 38; *see* Doc. 20 at p. 7). To the extent Plaintiff is asking the Court to overturn final state court judgments or orders, federal court would not be an available avenue

---

[18] The undersigned notes that the discussion below briefly addresses each of the Defendants' remaining arguments in favor of dismissal, except for Defendant Lake County's argument for failure to state a claim (Doc. 8 at pp. 3-4), which is more appropriate to address on repleader. *See, e.g., Calderon*, 2024 WL 5378959, at *6 n.12; *Knipe*, 2024 WL 988853, at *4; *Ally*, 2021 WL 2446760, at *4 n.5; *Alvarez*, 2019 WL 2868943, at *3; *Shaffer*, 2017 WL 1653789, at *1; *Bardelas*, 2021 WL 2531074, at *4.

to seek review because the *Rooker-Feldman* doctrine precludes federal courts (other than the Supreme Court of the United States) from reviewing and rejecting final state court judgments. *See, e.g.*, *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) (explaining the *Rooker-Feldman* doctrine); *see also Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Harper v. Chase Manhattan Bank*, 138 F. App'x 130, 132 (11th Cir. 2005) ("Under the *Rooker-Feldman* abstention doctrine, '[i]t is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision.'") (quoting *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997)).

That said, Plaintiff is cautioned that, should he file an amended complaint, he may not assert claims seeking to overturn state court judgments or orders in state court cases (or any other state court proceedings that become final in the interim), or the amended complaint will be subject to dismissal for lack of subject matter jurisdiction under *Rooker-Feldman*.

## 2. *Younger* Abstention Doctrine

Additionally, in the complaint, Plaintiff references several ongoing state court proceedings, including 2022-CA-000889, 2022-CA-000961, and 2017-CA-000667, and requests that the Court enter a declaratory judgment, declaring the actions of Defendants as unlawful for violating his constitutional rights to due process, access to the courts, and freedom of religion. (Doc. 1 at ¶¶ 17, 19, 23-25, p. 15). Pursuant to the *Younger* abstention doctrine, to the extent Plaintiff is asking the Court to interfere with ongoing state court proceedings, a federal court cannot interfere in such proceedings. *See, e.g.*, *Younger*, 401 U.S. 37 (1971); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-37 (1982) (explaining the application of the *Younger* abstention doctrine in the civil context); *31 Foster Child. v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) ("[F]ederal courts may and should

withhold equitable relief to avoid interference with state proceedings.") (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989)).

To that end, Plaintiff is (again) cautioned that, should he file an amended complaint, he may not assert claims against Defendants that seek to enjoin or interfere with ongoing state court proceedings, or the amended complaint will be subject to dismissal for lack of subject matter jurisdiction under *Younger*.

### E. Conclusion

Notably, Plaintiff is not an inexperienced litigator. A review of the case filings in the United States District Court for the Middle District of Florida reveals that Mr. Juravin has filed at least 15 actions (including civil actions and appeals from his bankruptcy proceedings) in this district since 2020, with four actions (including the present case) currently pending.[19]

---

[19] *See, e.g.*, *Juravin v. Federal Trade Commission (In re Don Karl Juravin)*, No. 6:20-cv-2117-PGB, at doc. 1 (M.D. Fla. Nov. 17, 2020); *Juravin, et al v. Kennedy, et al.*, No. 5:21-cv-514-GAP-PRL, at doc. 1 (M.D. Fla. Oct. 19, 2021); *Juravin v. Kennedy, et al. (In re Don Karl Juravin)*, No. 5:22-cv-606-GAP, at doc. 1 (M.D. Fla. Nov. 22, 2022); *Juravin v. Kennedy (In re Don Karl Juravin)*, No. 5:23-cv-138-GAP, at doc. 1 (M.D. Fla. Mar. 1, 2023); *Juravin v. Kennedy (In re Don Karl Juravin)*, No. 5:23-cv-164-GAP, at doc. 1 (M.D. Fla. Mar. 8, 2023); *Juravin v. Kennedy (In re Don Karl Juravin)*, No. 5:23-cv-166-GAP, at doc. 1 (M.D. Fla. Mar. 8, 2023); *In re Don Karl Juravin*, No. 5:23-mc-7-GAP, at doc. 1 (M.D. Fla. Nov. 9, 2023); *Juravin v. Bella Collina Property Owner's Ass'n., Inc., et al. (In re Don Karl Juravin)*, No. 5:24-cv-175-GAP, at doc. 1 (M.D. Fla. Dec. 7, 2023); *Juravin v. Kennedy (In re Don Karl Juravin)*, No. 5:24-cv-128-GAP, at doc. 1 (M.D. Fla. Mar. 18, 2024); *Juravin v. Kelleher, et al.*, No. 6:24-cv-1525-PGB-LHP, at doc. 1 (M.D. Fla. Aug. 22, 2024); *Juravin v. Judge Lori V. Vaughan, et al.*, No. 8:25-cv-485-TPB-TGW, at doc. 3 (M.D. Fla. Mar. 7, 2025) (dismissed plaintiff's complaint with prejudice); *Juravin v. Judge Cary F. Rada, et al.*, No. 6:24-cv-618-PGB-RL, at doc. 1 (M.D. Fla. Oct. 15, 2024) (pending)*; Juravin v. Jones, et al.*, No. 6:24-cv-1630-CEM-UAM, at doc. 23 (M.D. Fla. May 9, 2025) (pending, with a report and recommendation issued on May 9, 2025, recommending the Court to direct the Clerk to transfer this action to the Ocala division); *Juravin, et al. v. Bella Collina Property Owner's Ass'n., Inc., et al. (In re Don Karl Juravin)*, No. 5:24-cv-597-GAP, at doc. 59 (M.D. Fla. May 27, 2025) (pending, with the Court entering a memorandum opinion and order on May 27, 2025, affirming the Bankruptcy Court's memorandum opinion, final judgment, and related orders dated September 30, 2024, and ordering the Clerk to enter judgment for appellees); *Juravin v. Kelleher, et al.*, No. 5:25-cv-237-GAP-PRL, at doc. 9 (M.D. Fla. May 5, 2025) (pending, with plaintiff filing a motion for leave to file a corrected complaint on May 5, 2025).

Significantly, this Court has previously identified Mr. Juravin as a vexatious litigant relating to filing frivolous bankruptcy appeals and recently cautioned him about filing frivolous civil actions in this district. The Court designated Mr. Juravin as a vexatious litigant on April 22, 2024, restricting him from filing any additional appeals in connection with his underlying bankruptcy proceeding in *In re Don Karl Juravin*, No. 6:18-bk-6821-LVV, after he failed to cease filing his incessant frivolous bankruptcy appeals despite repeated warnings. *See Juravin v. Kennedy (In re Don Karl Juravin)*, No. 5:23-cv-138-GAP, at doc. 26 (M.D. Fla. Apr. 22, 2024). More recently, on March 7, 2025, the Court issued a warning to Mr. Juravin in a separate case involving similar issues to the ones presented here, but with different parties, about filing frivolous actions in the Middle District of Florida. *See Juravin v. Judge Lori V. Vaughan, et al.*, No. 8:25-cv-485-TPB-TGW, at doc. 3 (M.D. Fla. Mar. 7, 2025).

In that action, Plaintiff filed suit against the United States Bankruptcy Court of the Middle District of Florida and the United States District Court for the Middle District of Florida—two federal courts—and Judge Lori Vaughan and Judge Gregory Presnell—two federal court judges serving in the United States Bankruptcy Court for the Middle District of Florida and the United States District Court for the Middle District of Florida, respectively, alleging violations of his constitutional rights in federal court proceedings. *See id.* at doc. 1 (M.D. Fla. Feb. 28, 2025). The Court dismissed *sua sponte* Plaintiff's complaint with prejudice, finding that Judge Vaughan and Judge Presnell were entitled to absolute judicial immunity, and that Plaintiff's claims against the United States District Court for the Middle District of Florida and the United States Bankruptcy Court of the Middle District of Florida were barred

by the doctrine of sovereign immunity. *See id.* at doc. 3, pp. 2-4.[20] In dismissing the case, the Court issued a warning to Plaintiff, stating that "if he files frivolous cases in this Court, he may be subject to sanctions pursuant to Federal Rule of Civil Procedure 11(c), including monetary sanctions or injunctive relief directing the Clerk to not accept future filings by Plaintiff without first obtaining prior leave of the Court." *See id.* at p. 4.

This instant action is now at least the second case that Mr. Juravin, following adverse rulings, has filed suit against judges (state and federal) who presided over cases in which he was involved. Given his history of frivolous filings in this district, Plaintiff is cautioned that he may be subject to sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

Given the well-established legal standards discussed above and his documented history of litigation in this district, Plaintiff should consider whether he can file an amended complaint alleging claims against Defendants that are within the Court's jurisdiction and not barred by judicial immunity or other legal doctrines. Should Plaintiff be permitted to file an amended complaint, he is forewarned that the amended complaint must cure the deficiencies outlined herein,[21] provided he can do so in good faith and in compliance with Federal Rule of Civil Procedure 11.[22]

---

[20] The Court noted that "[a]mong other things, Plaintiff complain[ed] of a vexatious litigant order entered by Judge Vaughan that barred him from filing motions or papers unless signed by counsel admitted to practice in the Middle District of Florida, subject to limited exceptions. He further complain[ed] that Judge Presnell 'rubber-stamped' Judge Vaughan's rulings." *See id.* at p. 1 n.1.

[21] Although the undersigned addressed and provided some examples of the most prominent defects in the shotgun pleading, as discussed above, that is not intended to be an exhaustive list. Plaintiff's complaint may very well suffer from additional defects. Nevertheless, although he is proceeding *pro se*, it is Plaintiff's responsibility to ensure that the amended complaint complies with all applicable pleading requirements and procedural rules. *See Washington v. Dep't of Child. & Fams.*, 256 F. App'x 326, 327 (11th Cir. 2007) (per curiam).

[22] To the extent that Plaintiff's amended complaint fails to comply with Rules 8 and/or 10, those deficiencies may ultimately subject it to dismissal. *See Weiland*, 792 F.3d at 1320 (recognizing that a district court has the "inherent authority to control its docket and ensure the prompt

In preparing the amended complaint and any future filings, the Court recommends that Plaintiff visit the Court's website (www.flmd.uscourts.gov). Under the tab entitled "For Litigants," there is a section entitled "Litigants without Lawyers." In this section, there are many resources available to *pro se* parties, including a handbook called "Guide for Proceeding Without a Lawyer."

## IV.   RECOMMENDATION

Accordingly, upon consideration of the foregoing, it is respectfully recommended that:

(1) Defendant Lake County's motion to dismiss (Doc. 8) and Defendants Judge Rada and Judge Mosley's motion to dismiss (Doc. 20) should be **GRANTED in part** and **DENIED without prejudice in part**.

    a.  Defendant Lake County's motion to dismiss should be **GRANTED** to the extent that the complaint is a shotgun pleading and dismissed without prejudice.

    b.  Defendants Judge Rada and Judge Mosley's motion to dismiss should be **GRANTED** to the extent that Plaintiff's claims in the complaint asserted against them are barred by judicial immunity and dismissed without prejudice.

    c.  Defendants' motions to dismiss should be **DENIED** in all other respects.

(2) Plaintiff's complaint (Doc. 1) should be **DISMISSED without prejudice**.

---

resolution of lawsuits," which includes the ability to dismiss with prejudice a complaint that is a shotgun pleading); *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscaping Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) ("A district court has inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases.'") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

(3) Plaintiff should be **PERMITTED** to file an amended complaint in a timeframe established by the presiding District Court judge to correct the deficiencies identified herein, provided he can do so in good faith and in compliance with Federal Rule of Civil Procedure 11. Plaintiff should be cautioned that failure to file an amended complaint within the time provided may result in the Court dismissing the case without further notice.

**Recommended** in Ocala, Florida on May 27, 2025.


PHILIP R. LAMMENS
United States Magistrate Judge


Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy